BARTON PITTS, Respondent, v. D. M. STEELE MERCANTILE COMPANY, Appellant.

Kansas City Court of Appeals, May 2, 1898.

1. **Definitions:** PROMOTERS OF CORPORATION: EVIDENCE. A promoter of a corporation is not a law but a business term designating a person who takes part in the formation of the corporation and sustains some fiduciary relation thereto, and on the facts of this case an assignee for the benefit of creditors is *held* a promoter of a corporation to which the assets in his hands were turned over.

2. **Corporations:** ACTS OF PROMOTERS: CONTRACT. A contract by a creditor of an assigned estate with a promoter of a corporation that if he would consent to transfer the assigned assets to the corporation and assign his own claim to it the corporation when organized would pay him the amount of his claim, is binding on such corporation; and

if the corporation with knowledge of the transaction appropriated the benefits of the agreement it would be bound by it though the alleged promoter was without authority.

3. ———: RATIFICATION: KNOWLEDGE.   In order to bind a corporation in a contract by way of ratification it must be shown that the corporation acted with full knowledge of all the material facts connected with the transaction, especially the existence of the contract, its nature and consideration.

4. **Evidence**: ADMISSION: CONTRADICTION: CORPORATION.   Where defendant's witness testified that he told plaintiff defendant would not pay his demand, plaintiff may testify in rebuttal that the witness did tell him defendant would pay; and beside, where witness is the president of defendant corporation, such declaration made in the line of his duty is competent as a recognition of plaintiff's claim.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED AND REMANDED.

BROWN & DOLMAN for appellant.

(1) It does not appear in the evidence that the defendant corporation had any promoter, or that any one was interested in its formation except Mr. Steele, and it nowhere appears in the evidence that he knew any arrangement had been made for the proposed corporation to pay for this claim.   And the fact that Weakley was afterward a director in the new corporation can not have the effect to charge that corporation with malice of his previous act.   To do so "would be attended with the most dangerous consequences." Bank v. Cunningham, 41 Mass. 270, 276; Bank v. Hamlin, 14 Mass. 180; Bank v. Lewis, 39 Mass. 24; Bank v. Corner, 37 N. Y. 320; Mayor & Co. v. Bank, 111 N. Y. 446; Shaw v. Clark, 49 Mich. 384; Wheel Co. v. Wagon Co., 20 Fed. Rep. 699; Bank v. Loghed, 28 Minn. 396; R. R. v. Christy, 79 Pa. St. 54; Racine Co. v. Joliet Co., 27 Fed. Rep. 367, 375; Burt

v. Mfg. Co., 86 Ill. 66.   (2)   The court erred in permitting the plaintiff to prove the declaration of Weakley made long after the transaction on which this suit is founded, that the claim was a just one, and should be paid.   Spyker v. Spence, 8 Ala. 333; Henry & Co. v. Bank, 63 Ala. 527; Spring Co. v. Wagon Co., 35 Fed. Rep. 644; Bank v. Bateman, 7 Hav. & Johns, 104; R'y v Christian, 16 Atl. Rep. 628; R. R. v. Liddell, 11 S. E. Rep. 853.

THOS. F. RYAN for respondent.

(1)   A. B. Weakley was the promoter of the defendant corporation.   (2)   As such promoter he made the alleged contract with plaintiff.   (3)   By virtue of said contract the assignees of D. M. Steele conveyed to the defendant corporation the property of said Steele which they held as such assignees, and which property when so conveyed composed the major part of its assets.   (4)   The defendant corporation has accepted the benefits derived from said contract entered into by its promoter, Weakley, and continues to enjoy the fruits thereof, and has ratified the act of said Weakley. From the facts thus proven under the law, as announced by the following authorities, plaintiff is clearly entitled to recover.   2 Cooke on Stock and Stockholders, sec. 707, pp. 1405, 1046; Paxton v. Bank, 21 Neb. 621; Whitney v. Wiman, 101 U. S. 392; 1 Morawetz on Private Corp., 550; Rogers v. N. Y. & T. L. Co., 134 N. Y. 211; Furniture and Carpet Co. v. Crawford, 127 Mo. 356; Hill v. Gould, 129 Mo. 116.   (5)   If any error was committed in proving the statement of Weakley after the transaction, appellant is responsible for the same, for appellant first brought out that testimony in Weakley's direct examination.

SMITH, P. J.—The plaintiff in his petition alleged that in consideration of the promise of the defendant to pay him $502 he assigned to defendant a claim allowed in his favor against the estate of D. M. Steele by the assignees thereof for said sum of $502, and also authorized and consented to the transfer and delivery of all the assets of said estate to the defendant; that the defendant had refused to pay plaintiff said amount, wherefore, etc.

STATEMENT.

The answer was a general denial. There was a trial and judgment for the plaintiff and the defendant appealed. The defendant, at the conclusion of the evidence, requested the court by an instruction to direct the jury that under the pleadings and evidence the plaintiff was not entitled to recover. This instruction was refused and the action of the court in refusing the same is assigned as error.

The evidence presented by the abstract of the record tends to prove substantially these facts: That D. M. Steele was a member of the mercantile copartnership of Steele & Walker; that his individual assets amounted in value to several hundred thousand dollars; that Steele & Walker, and Mr. Steele individually, made an assignment to Wheeler and Weakley of their entire copartnership and individual assets for the benefit of all their creditors; that plaintiff presented a claim to said assignees for $502 for medical services rendered the Mr. Steele by him which was duly allowed by said assignee's against the latter's estate.

The evidence further tends to show that shortly after the assignment an agreement was entered into between Mr. Steele and a great number of his partnership and individual creditors to the effect that a mercantile corporation was thereafter to be organized, having a capital stock of one thousand shares of $100

each, of which shares Mr. Steele was to have all but five—one of the latter, Weakley, the assignee, was to have; that when the corporation was organized all the assets in the hands of said assignees were to be transferred to it, and when this was accomplished the commercial creditors were to release their claims against the partnership and Mr. Steele and accept in lieu thereof the obligations of the corporation. It further appears that in order to carry into effect this agreement it became necessary to obtain the consent of the individual creditors thereto or to pay off their claims. Accordingly a paper was prepared by the attorney of Mr. Steele which recited that the creditors signing the same, "consent to the transfer and delivery of all of the estate assigned by Dudley M. Steele under the assignment laws of this state for the benefit of his creditors. Said delivery to be made to the Dudley M. Steele Grocery Company to whom our debts are now assigned," etc. This paper was delivered to Weakley who presented the same to the various individual creditors of Mr. Steele, and in one way and another induced them to sign the same.

The testimony of the plaintiff was that Weakley "came to me and said he was collecting the individual claims and asked me if I was willing to put my claim in with the others—he knew that I had a claim against Mr. Steele—and take the assets, against which my claim was proven, out of the hands of the assignees and turn them over to this corporation, and asked if I was willing to go in with the other individual creditors. He said if I would do that my claim would be paid. That it was a matter of transferring the liability of the assignees to the corporation. And I said, 'Why, certainly, I am willing to do anything that will help Mr. Steele.' And I signed it with the assurance

that I would receive my money." "Mr. Ryan: Q. What, if anything, was said to you at that time by Mr. Weakley in reference to the intention of forming a corporation? A. He said if they succeeded in securing all of the names—making a satisfactory adjustment with the local and outside creditors that the assets would be turned over at once out of his hands and Mr. Wheeler's—from the assignees and turned over to the new company and that the company would settle the claims. He went on and stated in regard to the basis of settlement as to the foreign creditors—the merchandise creditors, they were to receive a certain percentage less than the loan brokers, and that the loan brokers were to receive 80 per cent of their claims. The merchandise creditors were to receive, and that he (plaintiff) signed the paper with this understanding."

Weakley was to be one of the directors in the intended corporation. After the consent of all of the creditors to the transfer of the property by the assignees had been obtained it was organized in pursuance of the agreement and an order of the circuit court was made directing the assignees to transfer and deliver the assigned property to the corporation. Mr. Steele, under agreement previously referred to, was to be made president of the corporation and to receive an annual salary of $3,000. It further appears that in about a month after the organization of the corporation seven hundred and ninety-four of the shares therein, which had been originally issued to Mr. Steele, were transferred to the wife of Mr. Weakley.

The question arises, was Weakley a promoter of the Dudley M. Steele Mercantile Company? The term "promoter" is not a term of law, but of business, usefully summing up in a single word a number of business

DEFINITIONS:
promoters of
corporation: evi-
dence.

operations familiar to the commercial world by which a company is generally brought into existence. Whaley, Etc., Co. v. Green, 5 Q. B. D. 109. The term is one of accepted use, commonly employed to designate persons who take some part in procuring the formation of a corporation, or in inducing others to join it and who, in so doing, assume such a position that a relation of a fiduciary nature between themselves and the corporation is created. Alger's Law Promoters & Prom. Corp., sec. 1. The term promoter involves the idea of exertion for the purpose of getting up and starting a company (or what is called floating it), and also the idea of some duty toward the company imposed by or arising from the position which the so-called promoter assumes toward it. Mining Co. v. Lewis, 4 C. P. D., loc. cit. 407.

Courts will look at the substance of the transaction, and vendors or others who are in reality the promoters will not escape liability by the interposition of a nominal vendor or a nominal promoter who professes to purchase and re-sell, or to undertake the financial operations incident to forming and floating a company. Alger on Promoters & Promotion of Corp., sec. 7. Turning to the acts of Weakley, what he did is already sufficiently indicated, and it is plain that he was active in removing obstacles in the way of setting the corporation afloat. It was not in the discharge of any duty as assignee that he obtained the consent of creditors to the transfer of the assigned property to the corporation, and their assignment to it of their claims. If he had simply obtained their consent to the transfer, without the assignment and without any promise that the corporation would assume and discharge such claims the case would be different. In view of the liberal compensation which is usually allowed assignees

for their services in administering the estates of insolvents it can hardly be presumed that Weakley, unless influenced by some consideration other than that of duty as assignee, would have actively participated in the effort of Mr. Steele and some of the creditors to take out of his hands as assignee the administration of this estate, the estimated value of which was over half a million dollars. It may be safely assumed that assignees under such conditions do not act that way. We do not think it will do to say that Weakley was simply acting in the capacity of assignee when he arranged with the various individual creditors of Mr. Steele to consent to the transfer of the assigned property to the corporation and to assign their claims to it.

The activity displayed by him in carrying forward the scheme to withdraw the property from the assignment and place it in the possession of the corporation would indicate that he was a promoter, yet it may be said if so that he was only a nominal promoter. It must be conceded that Mr. Steele was principally interested in the promotion of the corporation. It is true the commercial creditors were also interested for they no doubt foresaw that the assigned property administered by the corporation would be more beneficial to them than by the assignees. Mr. Steele was to be the recipient of a handsome annual salary from the corporation and was to be again placed in possession of his large property, and consequently he was greatly interested in the promotion of the corporation. He, or, which is the same thing, his attorney, placed in Weakley's hands the paper to which he was to obtain the signatures of creditors. For whom did he act in exercising this commission? It appears that an agreement or settlement had to be made with each creditor before his signature could be obtained. The

terms and conditions of the settlements varied. In arranging these it may be asked in what capacity or for whom was Weakly acting? It seems that his acts in the premises were accepted by Mr. Steele and the corporation in every case, unless it be in respect to that of plaintiff. The inference is clear that if nothing more he was at least actively representing Mr. Steele, the real promoter, and the acts and declarations of the former were in effect those of the latter.

In looking at the substance of the various transactions in which Weakley participated and to which we have already adverted it becomes plain that the position which he assumed in those transactions was of a fiduciary nature as respects the corporation. He solicited an assignment to it of the claims of creditors and pledged it to pay the same. In view of all the facts and circumstances disclosed by the evidence in doing this, we think we are justified in deducing the inference that he was not representing Mr. Steele simply as his agent, but that he was subserving some interest of his own and therefore he was a promoter of the corporation for which he assumed to act.

If the evidence tended to show, as we think it does, that Weakley was a promoter of the defendant corporation, and that he, as such promoter, entered into a parol agreement with the plaintiff to the effect that if plaintiff would consent to the transfer of the assigned assets by the assignees to said corporation and assign his claim to it, that the defendant, when organized, would pay him the amount of his claim, and that, in pursuance of such agreement, the plaintiff did give his consent to such transfer and did assign his claim and that the transfer was accordingly made and the defendant knowingly accepted all the benefits of such agreement, then it is liable. This, we think, is the well established

CORPORATIONS: acts of promoters: contract.

law.   Hill v. Gould, 129 Mo. 116; Furniture Co. v. Crawford, 127 Mo. 356; Paxton v. Bank, 21 Neb. 621; Monson v. R'y, 103 N. Y. 58; Whitney v. Wiman, 101 U. S. 392; 1 Morawetz on Priv. Corp., p. 550; Cooke on Stockholders, sec. 707.

And if Weakley was not a promoter but an assumed agent of the intended corporation and in the latter capacity made the agreement already stated with plaintiff it is not perceived why, after the organization of the defendant, it could not impliedly assume the responsibility of said agreement and make the same binding on it.   Such an assumption would be implied if the defendant, with knowledge of the facts, appropriated to itself the benefits and advantages derived from said agreement.   Mechem on Agency, sec. 75; Thompson on Corp., sec. 489.   If this agreement was adopted by the defendant after its organization it thus became binding, and such adoption could be shown by acquiescence.   Furniture Co. v. Crawford, *supra*.   In any view that may be taken of the evidence adduced we think it was sufficient to take the case to the jury.

In submitting the case to the jury on the evidence the court adopted the plaintiff's view of the law as appears from an instruction given by it to the jury at his instance to the effect: "That if you find from the evidence that the plaintiff at the request and with the promise of one A. B. Weakley that the Dudley M. Steele Mercantile Company, a corporation thereafter to be formed, would pay the plaintiff his claim which had been allowed him by the assignees of D. M. Steele, provided plaintiff would sign the paper read in evidence and assign his claim to the Dudley M. Steele Mercantile Company, and you further find that the plaintiff signed said paper and transferred his claim to the D. M. Steele Mercantile Company, and that the assignees of D. M. Steele as

—: ratifica-
tion: knowledge.

requested in said paper conveyed the property which they held as such assignees belonging to D. M. Steele to the D. M. Steele Mercantile Company, *and that said D. M. Steele Mercantile Company accepted the property so conveyed and the assigned claim of plaintiff*, and if you so find for plaintiff, your verdict will be for $501 with interest thereon at the rate of 6 per cent per annum from 18th day of December, 1894.''

This instruction in enunciation is at variance with the rule declared by the supreme court in Gould v. Hill, *ante*. It will be seen by reference to the *italicised* words of said instruction that it advised the jury that the defendant was bound by the promise of the said Weakley if it accepted the property transferred to it and the assigned claim of the plaintiff, while Gould v. Hill declares that a corporation is not bound by the contracts of its promoters unless so provided by its charter or by ratification or express provision after it becomes incorporated *or where it has, knowing its terms and conditions, received some benefit.* Accordingly, to entitle the plaintiff to recover on the theory of a receipt by defendant of the benefits or advantages flowing from the promise of Weakley to him he must show that the defendant had knowledge of the nature and terms of such promise. The rule is, that any ratification of an unauthorized contract in order to be made effectual and obligatory upon the alleged principal must be shown to have been made by him with full knowledge of all the material facts connected with the transaction to which it relates; and especially must it appear that the existence of the contract and its nature and consideration were known to him. He must know the facts. Mechem on Agency, sec. 129, and the numerous authorities there cited; Chouteau v. Allen, 70 Mo. 290; Winsor v. Bank, 18 Mo. App. 665;

Hyde v. Larkin, 35 Mo. App. 365. We therefore think the plaintiff's instruction was erroneous.

Nor was this error cured by the defendant's instruction which told the jury that the burden was on the plaintiff to prove, by a preponderance of the evidence, the facts necessary under the instruction of the court to authorize a recovery. This was not the assertion of the converse of plaintiff's instruction nor a request by the defendant for the submission of the case to the jury on a similar theory. It was no more than a request that the plaintiff be required to establish his theory by a preponderance of the evidence, and by making the same it did not thereby adopt the error of the plaintiff's instruction.

The defendant inquired of A. Weakley, a witness introduced by it, whether he had at any time told plaintiff that defendant would pay his demand. The witness answered that he had not but that he had told his (plaintiff's) counsel that it (the company) did not recognize his claim. The plaintiff was called as a witness and testified that after the death of Mr. Steele, the witness Weakley had told him that his claim was just and ought to be paid by defendant. The admission of this latter testimony, it is insisted, was error. It seems to us that such testimony was proper to contradict that of the defendant's witness, Weakley, just stated. And if, as we understand was the fact, the declaration of Weakley to which plaintiff testified was made in the discharge of his duty while he was acting as president and business manager of the defendant, and in answer to a demand by plaintiff on the defendant for the payment of his claim, then no reason is seen why it was not competent as tending to prove a recognition by the defendant of the plaintiff's claim. Under such circumstances the admission would be

EVIDENCE: admission: contradiction: corporation.

that of defendant and was competent. Thompson on Corporations, sec. 4656; Chouteau v. Allen, 75 Mo. loc. cit. 307; Malecek v. R'y, 57 Mo. 17; T. & S. Co. v. Lumber Co., 118 Mo. loc. cit. 462; Thompson on Corporations, sec. 4912. Nor is any reason seen why, if this declaration was so made, the inference of knowledge on the part of the defendant of the terms and conditions of the agreement under which plaintiff claims there is liability, may not be fairly deduced therefrom.

On account of the error in the giving of plaintiff's instruction the judgment will be reversed and cause remanded. All concur.