446    SUPREME COURT OF MISSOURI,

State ex rel. Life Ins. Co. v. Trimble.

# THE STATE ex rel. KANSAS CITY LIFE INSUR-ANCE COMPANY v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

Division Two, October 6, 1925.

1. **CERTIORARI: Admission: Life Insurance: By Officer of Company: Premium Note.** The Court of Appeals did not contravene the previous decisions of this court, under a similar state of facts, in holding that the testimony of the attorney for the beneficiary that, after the insured's death, he had talked with the assistant secretary of the defendant company, who had charge of defendant's premium department and the collection of premium notes, and that in said conversation said officer stated that he had had a number of conversations with the insured about the payment of the premium notes after default thereof, was admissible against the company.

2. ——: ——: ——: ——: **After Death of Insured: Proof of Prior Waiver.** Likewise the Court of Appeals did not contravene prior controlling decisions of this court in holding that the testimony of the attorney for the beneficiary, to the effect that, after the death of insured, he asked the assistant secretary of the defendant company, who had charge of the defendant's premium department, whether the life policy sued on was in force, and that said officer, after causing an examination of the records to be made, although he did not then know that insured was dead, stated that the policy was in force and that the next premium would be due a month later, was competent, not as waiver, but as in the nature of proof that defendant had theretofore waived the forfeiture.

3. ——: **Waiver: Life Insurance: Demanding Payment of Premium Note.** Two notes due six months after date and signed by the insured accompanied the application, which provided that any note given for the premium should be applied on the first premium, and the policy provided that upon failure to pay any premium note when due the policy should become null and void without any action or notice by the company, and all rights should be forfeited to the company. The notes were never paid, but after they became due the company sought to collect them from the insured, who died eleven months after the policy was issued. *Held*, that the Court of Appeals in holding that the demand by the company for the payment *in full* of the premium notes, after they were due, was evidence tending to show waiver of forfeiture, did not contravene

any previous decision of this court, because this court has never decided the point.

4. ———:· ———: Life Insurance: Notice of Premium Due: Identification. Five days after the insured's death and one month before the end of the first premium year, the company, without knowledge that the insured was dead or had been sick, sent a notice stating that a premium would be due the next month and that "a grace of thirty days, during which the insurance will remain in full force, will be allowed in the payment of all premiums except the first" and that "you are hereby notified that the premium required to renew your policy will become due and payable at this office on said date, and unless said premium shall be paid on or before said date the policy will have become void." The policy stipulated that upon failure to pay a premium or a premium note when due the policy should become null and void without any action or notice by the company and all rights thereunder should be forfeited, except that the company would re-instate the policy upon written request of the insured, accompanied by satisfactory evidence of insurability and the payment of all premiums in arrears. The premium notes, given at the time the policy was issued and due in six months, were never paid, and they were due five months before the insured's death, and after they became due the company had demanded that they be paid in full. The above notice was enclosed in an envelope upon which were the words; "Return in five days to Kansas City Life Ins. Co., Rialto Building, Kansas City, Missouri" and "Kansas City, August 14, 2 P. M. 1916, Mo." and which was addressed to the insured, and after his death his widow, the beneficiary, found the envelope, with the notice inside, among her husband's mail. The notice was headed by the names of the officers and the words, "Kansas City Life Insurance Company, Kansas City, Missouri," the name of the defendant company which had issued the policy, and it mentioned correctly the number of the policy, the due date of the second premium and the correct address of the insured, but it was not shown to have been signed by a duly authorized agent of the company. Defendant neither admitted nor denied that it sent the notice. *Held*, that the Court of Appeals, in holding (a) that the notice was so sufficiently identified that the trial court did not commit error in admitting it in evidence and (b) that the recitals in the notice were inconsistent with a contention that the policy was not in force at the time the notice was sent, did not, upon the facts stated, contravene any previous decision of this court.

5. ———: ———: ———: Sufficient Evidence. Waiver is essentially a matter of intention, and may be implied from a clear, unequivocal and decisive act. The Court of Appeals in holding, in an

action on a life insurance policy, which the defendant claimed had been forfeited by a failure to pay the first-year premium notes, that evidence tending to show that, after the six-months notes covering the first year's premium became due, defendant sought to collect them in full; that defendant thereafter notified the insured that the second year's premium was about to mature, and that the insurance was in full force and would become void unless the premiums were paid on or before the end of the year; and that after the insured's death the defendant admitted that the policy was in full force and effect, was sufficient to show a waiver of the forfeiture provisions of the policy, did not contravene any previous decision of this court.

6. ———: To Court of Appeals: Conflict with Own Decisions and Text-books. The fact that an opinion of a court of appeals is in conflict with other decisions of a court of appeals, or with the announcements of text-books, is no ground for quashing the opinion; to quash an opinion of a court of appeals on *certiorari* it must conflict with previous controlling decisions of this court.

Corpus Juris-Cyc. References: Certiorari, 11 C. J., Section 37, p. 106, n. 71. Evidence, 22 C. J., Section 55, p. 115, n. 84; Section 1109, p. 906, n. 77; p. 907, n. 79, 80, 82; p. 908, n. 83. Waiver, 40 Cyc. p. 270, n. 52.

*Certiorari.*

WRIT QUASHED.

*George Kingsley* and *Frank W. McAllister* for petitioner.

(1) The opinion of the Court of Appeals, holding competent the testimony of witness Brown, that Assistant Secretary Sears admitted, after the death of insured, that he had talked to insured about payment of the premium notes, as an admission of the defendant company, is in conflict with controlling decisions of this court. State ex rel. Bankers Life Ins. Co. v. Reynolds, 277 Mo. 22; Sinclair v. Railroad, 253 S. W. 382; Redmon v. Railroad, 185 Mo. 1. (2) The opinion of the Court of Appeals, holding the testimony of witness Brown that Assistant Secretary Sears admitted to him, after the

State ex rel. Life Ins. Co. v. Trimble.

death of the insured, that the policy was in force, competent as an admission of defendant company, is in conflict with controlling decisions of this court. State ex rel. Bankers Life Ins. Co. v. Reynolds, supra. (3) The opinion of the Court of Appeals, that a demand by the assistant secretary of the company for the payment of the premium notes after the same were due tends to show waiver, is in conflict with controlling opinions of the Supreme Court. Pa. Ins. Co. v. Geraldin, 31 Mo. 30; Am. Ins. Co. v. Klink, 65 Mo. 82; Marshall v. Life Ins. Co., 148 Mo. App. 678; Malone v. Life Ins. Co., 202 Mo. App. 502; 14 R. C. L. par. 369, p. 1192. (4) The opinion and holding of the Court of Appeals, that the alleged notice that the second annual premium would be due, was sufficiently identified and competent as evidence, is in conflict with controlling decisions of the Supreme Court. Kregain v. Blake, 239 S. W. 501; Hardin v. Lee, 51 Mo. 244; Perry v. Roberts, 17 Mo. 36; Brown v. Massey, 138 Mo. 533; Linn v. Ins. Co., 78 Mo. App. 192; 9 A. L. R. Annotation, pp. 984-993. (5) The opinion of the Court of Appeals, that there was substantial evidence to show that defendant company had waived the provision of the policy under which it automatically terminated for failure to pay the premium notes, is in conflict with controlling decisions of the Supreme Court. Langdon v. Kleeman, 278 Mo. 242; Schwab v. Yeoman, 264 S. W. 692; Kazee v. Life Ins. Co., 217 S. W. 339; Ashbrook v. Life Ins. Co., 94 Mo. 72; Bondurant v. Life Ins. Co., 198 S. W. 74; Knickerbocker Ins. Co. v. Pendleton, 112 U. S. 696; Iowa Ins. Co. v. Lewis, 187 U. S. 335; Gunter v. Philadelphia Ins. Co., 125 S. E. 285; 25 L. R. A. (N. S.) 78, et seq.; 14 R. C. L. par. 334, p. 1155.

*Solon T. Gilmore* for respondents.

(1) The admission by Assistant Secretary Sears that he had talked to the insured about the payment of the premium notes was an admission of the defendant company, or at least was evidence of an admission of the

310 Mo. Sup.—29.

defendant company that it considered the policy still in force. A policy had been issued; the insured had died; the beneficiary was taking up with the insurer the question of liability. Her representative had gone to the office of the company where he was referred to the assistant secretary, an officer that the company is required, under the statutes, to have and the transaction of business upon which her representative called was between that representative, the witness Brown, and the assistant secretary. (2) The ruling of the Court of Appeals was not in conflict with the latest, nor with any of the decisions of this court. The admissions made by Sears in the conversation with Brown in the offices of the company were competent. It was shown by the evidence of both parties that the conversation really occurred between Brown and Sears. This company, which can only speak through the mouths of its agents, referred this matter to the consideration of Sears, whether he had ever had authority to transact such business in the past or not, and the testimony given was what the agent, so authorized to transact the business, had stated. Harris v. Ins. Co., 248 Mo. 304. (3) All of the conversations with Sears were admissible under a well-established rule of this court, even outside of the question of his authority to transact this particular business. Phillips v. Railroad, 211 Mo. 419; McGenness v. Adriatic Mills, 116 Mass. 180; Malacek v. Railroad, 57 Mo. 17; Nickell v. Ins. Co., 144 Mo. 431. (4) This court has never held that a demand for the payment of premiums covering any portion of a period during which the insurance company has a right to say that the policy was void, is consistent with a claim that that right is being exercised. With one exception, and that is where the policy itself provided that if default was made in the payment of a premium note, the entire premium note should be considered to have been earned during the time preceding the maturity of the premium note. Marshall v. Ins. Co., 148 Mo. App. 669. (5) There is no decision of this court which is ignored or repudiated by the decision of the Court of

Appeals in the case at bar. (6) The evidence is sufficient to warrant a finding of the jury that the company waived the forfeiture of the contract. Harris v. Ins. Co., 248 Mo. 304.

BLAIR, J.—*Certiorari* to the Kansas City Court of Appeals, wherein petitioner (relator) seeks to quash the opinion and judgment of respondents in affirming the judgment of the circuit court in the case of Sallie B. O'Donnell, Respondent, v. Kansas City Life Insurance Company, Appellant, lately pending before respondents. Our writ issued and respondents have filed their return.

In their opinion respondents thus state the facts:

"This is a suit upon a life insurance policy in the sum of $5000, issued September 14, 1915, by the defendant upon the life of James H. O'Donnell in favor of plaintiff as beneficiary. The insured died on August 19, 1916. There was a verdict and judgment in favor of plaintiff in the sum of $6612.50 and defendant has appealed.

"This is the second appeal in the case (see O'Donnell v. Kansas City Life Ins. Co., 222 S. W. 920). The facts concerning this litigation were fully set forth in the opinion in that case, and it will not be necessary for us to go extensively into the testimony except in so far as it may be necessary in passing upon the points raised in this appeal.

"It appears that there were two notes taken from the insured by the agent who solicited the insurance, dated August 27, 1915, the date of the application, and due six months after date, payable to the agent and indorsed to defendant by the latter. It was provided in the application that in case it was accepted any note given for the premium should be applied on the first premium. The policy provided that in case of the failure to pay any premium on or before the date when due or of the failure to pay any premium note when due, the policy issued should become null and void without any action or notice by the company, and all rights should be forfeited to the company except as provided in the policy. The

policy stipulated that in case of failure to pay any premium or premium note the company would re-instate the policy at any time upon the written request of the insured, accompanied by evidence of insurability satisfactory to the company and the payment of all premiums in arrears and the payment or re-instatement of any indebtedness existing at the date of the default together with interest thereon.

"The undisputed evidence shows that the notes were not paid when due and in fact were never paid; that after they became due defendant sought to collect them from the insured; that on or about the 24th day of August, 1916, without knowledge that insured was ill, defendant sent a notice that a premium would be due on the policy on September 14, 1916; this notice stated that 'a grace of thirty days, during which the insurance will remain in full force, will be allowed in the payment of all premiums except the first.' On the reverse side of the notice appeared the following:

" 'Notice to Policy Holders: You are hereby notified that the premium required to renew your policy will become due and payable at this office on date given on reverse side, and unless said premium shall be paid on or before said date the policy will have become void, and all payments made thereon will become forfeited.'

"The evidence further shows that after the death of the insured an attorney, acting for plaintiff, called defendant's home office over the 'phone and was put in communication with defendant's assistant secretary. Without telling him that insured was dead, the attorney asked him if the policy was in force and he replied, 'Wait a minute.' He left the telephone and in a few minutes came back and said, 'The policy is in force and the next premium will be due on the 14th day of September.' The assistant secretary was put upon the stand by the defendant and testified upon cross-examination that as an officer of the defendant in charge of its premium department he had charge of the premium notes at the time of the happening of these matters; that he

knew whether or not they were paid and that he knew the notes were in default from the time of their maturity; that he remembered when plaintiff's attorney called up in reference to the policy and his asking whether the policy was in force; that he thereupon made inquiry of the renewal department of the person in charge thereof and who kept the records of that department, where he would go for information on the subject, and was told that 'the policy appeared to be in force;' that he gave the attorney information to this effect; that on August 24, 1916, after learning of the death of the insured, he wrote plaintiff that the policy was not in force for the reason that insured did not pay the premium notes.

"Afterwards plaintiff's attorney went to the office of the defendant and saw the assistant secretary and at this time the latter said to him 'that he had had a number of conversations with Mr. O'Donnell' (the insured), 'one of which was shortly before his death and that Mr. O'Donnell had promised that he would pay, would come in shortly to pay the premium.' (Evidently this refers to the payment of the premium notes). Defendant failed to offer in evidence the records of the renewal department to show whether or not they disclosed that the information obtained by the assistant secretary at the time of the telephone conversation was an error or true."

Upon this state of facts, respondents held that the evidence tended to show that relator waived the default of the insured in the payment of the premium notes and that the policy was in force at the death of the insured. They accordingly affirmed the judgment rendered upon the verdict of the jury below. The opinion of respondents is assailed as being in conflict with controlling decisions of this court in several particulars, which we will proceed to consider.

I. It is contended first that the opinion of respondents conflicts with State ex rel. Bankers Life Ins. Co. v. Reynolds, 277 Mo. 1. c. 22, 23; Sinclair v. Railroad, 253

S. W. 380, l. c. 382, and Redmon v. Railroad, 185 Mo.
l. c. 12, in holding competent, as an admission
of the defendant company, the testimony of
the witness Brown that assistant secretary
Sears admitted, after the death of the insured,
that he had talked to insured about the pay-
ment of the premium notes after default
thereof.   On this point respondents said:

*Company's Officer: Admission After Death of Insured.*

"The statements of the assistant secretary of the
company relating to the conversations he had with the
insured concerning the payment of the notes were ad-
missible as going to show that the company was attempt-
ing to collect the full year premium after the date it had
claimed that a forfeiture had occurred.   It is claimed
that the assistant secretary of the defendant is not shown
to have had authority to bind the defendant as to state-
ments he made relating to matters occurring prior to the
death of the insured.   We assume that this refers to the
statement of the assistant secretary to plaintiff's at-
torney that he had talked to the insured about paying
his premium notes.   However, it appears that the as-
sistant secretary was in charge of the matter of collect-
ing the premium notes, and the conversation had be-
tween him and the insured in reference to their collection
would appear to be competent testimony.   [Porterfield
v. Surety Co., 210 S. W. 119; Phillips v. Railroad, 211 Mo.
438, 441.]   And it seems clear to us that if the assistant
secretary who had charge of defendant's premium de-
partment and the premium notes in question, and their
collection, would not have implied authority to bind the
defendant by the admission that he attempted to collect
these notes made in the course of the business that he
had charge of and with respect to matters within the
scope of his authority, no officer of the defendant had
such authority.   These admissions were made at the home
office of defendant by an executive officer to whom plain-
tiff's attorney was referred for information on the sub-
ject.   Consequently, to hold that the evidence was in-
competent on the ground of lack of authority in him

would be to say that defendant, being a corporation and acting only through agents, could not made admissions of this kind. We cannot so hold. [Fowles v. Loan Co., 86 Mo. App. 103; Pitts v. Steele Merc. Co., 75 Mo. App. 221.]''

The Porterfield case, cited and relied upon by respondents, was an opinion by the Kansas City Court of Appeals in a case where an insurance broker had secured for the defendant surety company the business of furnishing bond for the contractor for the Missouri State Capitol building and was to be paid a percentage of the annual premium while the bond was in force. The surety company collected three years' premiums and waived the payment of premium for the fourth year, although the bond remained in force. A statement of the vice-president and general manager of the surety company was held to be properly admitted in evidence. Such statement indicated that the surety company was liable to the broker for his percentage of the agreed premium, whether received by defendant or not. TRIMBLE, J., there said: ''As this officer was intrusted with the management of the business concerning this bond, what he knew of it was not from hearsay, nor were his admissions or declarations relative to the business incompetent or inadmissible.''

In Phillips v. Railroad, 211 Mo. l. c. 438 to 441, a letter from the chief surgeon of the railroad to its assistant general auditor, written two days after the death of plaintiff's husband, without knowledge of such death, was held to be competent evidence to show that the chief surgeon knew that deceased was mentally unbalanced when he was permitted to go upon a train unattended to his home, where he was run over and killed by a street car. Judge GRAVES said:

''This was the third time that the deceased had been under the treatment of the hospital force, and if he was insane, it was the duty of defendant's chief surgeon, who was also chief surgeon of the hospital, to make known that fact under the rules above mentioned. His duties

had not yet terminated, and when he wrote the letter he was simply in the performance of such duties. Under such circumstances this letter is in the nature of a report made by one official to another, and is not in the same line as a statement made, after an accident, but too late to be recognized as a part of the *res gestae*. The cases usually applying the *res gestae* doctrine have no application here.

"We think that this letter is in the nature of an official report from one of the chief officials of defendant to another of such officials and a report. which was ' contemplated by the rule. It stands in the nature of an admission by an agent, whilst acting in the line of duty, and as such is an admission of defendant. [Malecek v. Railroad, 57 Mo. l. c. 21; McGenness v. Adriatic Mills, 116 Mass. l. c. 180; 2 Wharton's Law of Ev. (3 Ed.) sec. 1177.]

"In the Missouri case cited, it was said: 'The evidence of the admissions of Buell, the company's superintendent, was certainly admissible to prove that it recognized the assault, etc., of its driver, and justified it upon the ground of the non-payment of fare. Corporations can only act and speak through their authorized agents. The acts and admissions of Buell, in this regard, were those of the corporation.'

"The Massachusetts court in the case cited, speaks tersely in this language: 'The remaining question is in reference to the admission in evidence of the statement of the superintendent. The defendant is a corporation, and can only act through agents, and, in the absence of any evidence to the contrary, the superintendent in charge of the mill must be deemed the proper person to whom to make complaint and to have authority to give information and direction in regard to the drainage from it. His recognition that it was a matter that required to be attended to and should be, was therefore properly put in evidence. [Morse v. Railroad, 6 Gray, 450.] The expression used by him, that he "would not have it around his place as it was around there for $500," was a mere

mode of stating that the nuisance existed, and could not have been considered as an admission that this sum was the amount of the damages, nor do we understand that it was put in evidence as such.'

"And Dr. Wharton, in his most excellent work, couches the rule thus: 'As has been already incidentally seen, a party who commits the management of his whole business, or of a particular line of his business, to an agent, is bound by the admissions of the agent, as to his entire business committed to him; nor, when the agent is a general agent, representing his principal contin-- uously, is it necessary for the admission of such dec- larations that they should either have been part of the *res gestae,* or should have been specially authorized. Eminently is this the case with corporations.' [2 Whart. Law of Ev. (3 Ed.) sec. 1177.]"

In the Malecek v. Railroad case, quoted from by JUDGE GRAVES in the Phillips case, the plaintiff was a passenger on a street car. He was wrongfully accused of not paying his fare and was assaulted and humiliated before other passengers. He afterwards went to the superintendent of the street railway to speak to him about the affair "and the latter told him to 'hush up,' that he had directed the drivers to throw him out of the car, remarking, that the plaintiff did not pay." This is the statement held to be admissible in the Malecek case in the quotation from that case in the Phillips case.

In State ex rel. Bankers Life Insurance Co.. v. Rey- nolds, supra, the first case cited by relator as having been contravened by respondents' ruling above set out, the opinion of the St. Louis Court of Appeals was quashed in a *certiorari* proceeding because it sustained the trial court in admitting the statement of the cashier of a "depository. bank," that all of the assessments on the certificate of insurance there involved had been paid with the exception of the October, 1913, assessment. The depository bank was merely a bank where the insurance company allowed payment of assessments to be made by

its certificate holders. The cashier was a mere employee of a collecting agency. What he said was not part of the *res gestae* and was not said by him as one having authority to speak for the insurance company.

Sinclair v. Railroad, supra, cited by relator, was a decision by the Kansas City Court of Appeals and need not be discussed. Even if the opinion of respondents did conflict with that case, it would constitute no ground for quashal thereof.

The other Supreme Court case cited and relied upon by relator under its first point, is Redmon v. Railroad, 185 Mo. 1, 1. c. 12. There the admission in evidence of the statement of the train conductor to the plaintiff after he had been hurt, in explanation of the cause of a sudden stop of the train, was held to be error because not part of the *res gestae.* Said statement was also held inadmissible on the ground contended for, to-wit: That the conductor was the agent of the company and made the statement by authority and to a passenger who had the right to demand the cause of his injury.

In their brief here respondents have this to say about their ruling upon the admission of this particular testimony.

"We submit, therefore, that regardless of whether the statements made by Mr. Sears were competent as the statements of an agent while in the discharge of the duties pertaining to which the admission was made, that is, whether or not the admissions were a part of the *res gestae* and made while under the influence of the transaction of the business or in the fervor of the work, his admissions were admissible as those made by a general agent, one who was supposed to know the facts and whose statement of those facts is equivalent to the statement of the corporation."

In the Bankers Life and Redmon cases the statements held to be inadmissible were made by agents of very limited authority. In this case the alleged statement was made by an assistant secretary of the corporation in its home office. He was the home office man, at

the head of the department having the very matter in charge. If any human being could speak authoritatively upon such matter for the corporate entity, Sears was that human being. The case of Phillips v. Railroad and Malecek v. Railroad, supra, lend some support to respondents' contention here. The cases relied upon by relator are not controlling, because of the relative want of authority of the agent whose statements were held to be inadmissible. We are cited to no decision of this court, upon a similar state of facts, which is contravened by the ruling we have been considering.

II. The next contention is that the ruling of the Court of Appeals, holding competent as an admission of relator the testimony of the witness Brown that Mr. Sears told said witness, after the death of the insured, that the policy was in force, is in conflict **Admission After Death of Insured.** with the same cases above relied upon. Concerning the competency of this portion of Brown's testimony, respondents said:

"Objection is made to the testimony of plaintiff's attorney relating to the telephone conversation with the assistant secretary of the defendant, for the reason that the 'rights of the parties became fixed at the death of the insured, and nothing said or done thereafter could waive any forfeiture which occurred before the death of the insured.' This evidence was not introduced for the purpose of showing waiver at the time the statement was made by the assistant secretary, but it was competent evidence upon the question as to whether the defendant had theretofore waived the forfeiture. [O'Donnell v. Ins. Co., supra.] The same may be said of the introduction in evidence by the plaintiff of the notice of the second year premium."

What we have said in disposing of the contention considered in Paragraph I applies equally to this contention of the inadmissibility of the testimony as to the statement of Sears that the policy was in force. The conversation was over the telephone, but Sears admitted

460          SUPREME COURT OF MISSOURI,

State ex rel. Life Ins. Co. v. Trimble.

on the witness stand that he had talked to Brown over the telephone and told him the policy appeared to be in force. The fact that insured was dead at the time does not appear to affect the admissibility of the testimony. It made no difference in Phillips v. Railroad, supra, where the chief surgeon's letter was written two days after plaintiff's husband was killed. This assignment must be disallowed, for the reasons discussed under Paragraph I.

III. It is further contended that respondents' opinion conflicts with controlling decisions of this court in holding that a demand by the assistant secretary of relator for the payment in full of the premium notes, after

Waiver. the same were due, tends to show waiver of forfeiture by relator. The only decisions of this court cited are Pennsylvania Ins. Co. v. Geraldin, 31 Mo. 30, and American Ins. Co. v. Klink, 65 Mo. l. c. 72. Ruling Case Law and two cases from the courts of appeals are also cited, but such authority and decisions could not engender conflict authorizing quashal of respondents' opinion and they need not be noticed, even assuming that respondents' opinion is not in harmony therewith.

Upon this question respondents said: "We think there is no question but that there was sufficient evidence to show a waiver of the forfeiture provisions. After the notes became due and were unpaid, defendant sought to collect the premium notes covering the full year's premium."

And again as a part of the opinion we have previously quoted, respondents said: "The statements of the assistant secretary of the company relating to the conversations he had with the insured concerning the payment of the notes were admissible as going to show that the company was attempting to collect the full year premium after the date it had claimed that a forfeiture had occurred."

We are unable to discern any conflict between what was said by respondents and said cases. In Pennsyl-

vania Ins. Co. v. Geraldin, supra, the policy contained a stipulation that, "In case any note or obligation given for the premium on this risk shall not be paid at maturity, such failure of payment shall, at the option of the company, render this policy void." Default in payment occurred. The company declared a forfeiture and sought to collect the entire note given for the premium for the full period. It was held that the company was only entitled to recover *pro rata*. As a forfeiture was declared and enforced by the insurance company in that case, there could have been no question of waiver of forfeiture.

We are unable to find anything decided in the American Ins. Company v. Klink, supra, with which the ruling of respondents here being considered conflicts. As stated by Judge Hough in that case: "The only question presented is, whether, on the facts stated, the plaintiff was entitled to recover the full amount of the note, or only such part thereof, as would bear the same proportion to the full amount, as that portion of the period of the risk prior to the notice of default bears to the entire period covered by the policy." There the failure to pay an installment of the note did not annul or avoid the policy, but only suspended liability under the policy during the continuance of the default.

Both the cases relied upon by relator were suits to collect notes given for premiums. Neither sheds any light upon the correctness of the ruling of respondents that the efforts of the relator to collect the full face of the premium notes after maturity constituted evidence of waiver of forfeiture. It is not apparent how such ruling of respondents conflicts with said cases.

In its brief relator refers to Malone v. State Life Ins. Company, 202 Mo. App. l. c. 502. That case has no bearing in determining the issue of conflict of decision; but it does not go to the extent of ruling that in all cases the effort to collect notes given for a premium payment after default does not amount to a waiver of the forfeiture, where the policy provides that such default

shall avoid the policy. In that case the note was made to the agent, who paid the company's share of the first premium, so that there was no default so far as the company was concerned. The court said: "The point is that there is no waiver of the effect of non-payment of a premium note by thereafter receiving or collecting what the insurer *is justly entitled to receive or collect in the absence of a waiver.*" (Italics ours).

In Marshall v. Missouri State Ins. Co., 148 Mo. App. 669, also cited by relator, the premium notes stipulated that the insurance contract should be annulled if such notes were not paid when due and that full amount of the premiums should be considered as having been earned by the policy remaining in force during the period previous to the default. No such provision appears to have been in the notes or the policy in the case decided by respondents here. In the Marshall case the company was entitled to collect the full amount of the notes after default without being held to have waived the forfeiture. Though that case is not controlling in this proceeding, there is nothing ruled therein which may be said to be out of harmony with respondents' opinion. The case is clearly distinguishable.

In this case respondents took the position that relator was not entitled to collect the *full* amount of the note given for a *full* year's premium when the default at the end of six months forfeited the insured's rights under the policy from the date of such default. Respondents put their ruling that the attempt to collect the *full amount* of the note after such default was evidence of waiver upon the ground that relator was not entitled to collect the notes *in full*. There is nothing in any of the cases cited by relator with which such ruling conflicts. Even if respondents' ruling is not correct, such ruling furnishes no basis for this court to interfere by its writ of *certiorari.*

IV. Another alleged conflict is in respect to the ruling of respondents that the alleged notice that the sec-

ond annual premium would be due was sufficiently identified and competent in evidence. Upon this proposition respondents said:

"Objection was made to the introduction in evidence of the notice to insured that the second premium was due, and the envelope in which this notice came. This notice was identified by plaintiff. She stated that on examination of deceased's mail after his death she found the notice in the envelope. At one place in her testimony she stated that she thought it was a card, but evidently she must have referred to the notice itself being written on an ordinary card instead of on a postal card, for the reason that she afterwards identified the envelope as containing the notice and stated that she did not know whether the envelope was sealed or unsealed at the time she procured it. The envelope and notice were introduced in evidence at the first trial, but had been lost in the *interim* and copies were introduced in evidence at the last trial. The copy of the envelope shows that it had written or printed on it the following: 'Return in five days to Kansas City Life Ins. Co. Rialto Building Kansas City, Missouri;' 'Kansas City, August 14, 2 P. M. 1916, Mo.' It is insisted that plaintiff did not show that the letter was in answer to one written by the deceased and it did not appear that it came through the mails; that it is not shown to have been signed by any duly authorized agent of the defendant. The question as to whether a sufficient foundation has been laid for the admission of evidence of this kind is addressed largely to the discretion of the trial court (22 C. J. pp. 907, 908). The person to whom the letter was addressed was dead; his wife found the letter in his mail with the postoffice stamp upon the envelope and the return mark of the defendant. The copy of the envelope shown in the abstract fails to disclose the name of the addressee or that there was one. It does not appear whether the envelope was of the 'window' variety, but it might well have been, as the inclosure was addressed so such an envelope could have been used. The envelope came

through the mails, and this could not have happened in the absence of the name of an addressee disclosed by the envelope, so the inference is strong that such disclosure appeared. We, therefore, are justified in saying that there was evidence that the envelope came through the mails addressed to the insured.

"It appears that at the former trial defendant's secretary identified this notice, but he was not asked concerning this matter at the last trial, and this part of the record of the former trial was not used in this case, and we may not consider this as helping out plaintiff in the matter. There was uncontradicted testimony without the use of this notice ample to show a waiver of the forfeiture on the part of the defendant. Defendant did not deny that it sent the notice and on its face it bears evidence of the source from which it came and relates to matters which would be known only to the alleged sender and the addressee. It is headed by the names of the officers and the words 'Kansas City Life Insurance Companv, Kansas City, Missouri;' it mentions correctly the number of the policy, the due date of the second premium, the correct amount thereof and has the correct address of the insured.

" 'The mere fact that a letter purports to have been written by the person who is claimed to be the writer thereof is not alone sufficient to warrant its reception in evidence, but it is necessary that there shall be some other proof of its authenticity and genuineness. The usual method of proving the genuineness of a letter is by proof of the handwriting; but other evidence may be resorted to for this purpose. Thus a letter not in the handwriting of the alleged sender may be looked into for internal evidence of the source from which it came, as for instance the fact that it relates to matters which are known only to the alleged senders. A telegram, like a letter, is not admissible in the absence of proof of its authenticity either by proof of the handwriting, where the original message is offered, or by other evidence of its genuineness.

" 'It is not necessary that it should be proved beyond a reasonable doubt that the letter is that of the alleged author, but evidence which, if uncontradicted would satisfy a reasonable mind of that fact is sufficient to authorize the admission of the letter, and whether a sufficient foundation has been laid for the admission of the evidence is a matter addressed to the discretion of the trial court.' [22 C. J. pp. 906, 907, 908, sec. 1109.] We think under the circumstances that the court did not err in admitting the notice in evidence.

"It is stated that the contents of the notice are not inconsistent with the idea of forfeiture; that 'it was reasonable to suppose that the insured might desire to take advantage of his right to re-instatement. Under this state of the facts it was not inconsistent with the forfeiture of the policy subject to re-instatement to keep the insured advised for a reasonable time of the maturity of future premiums. The notice was not a demand for a past due premium, but was notice of a premium to become due in the future.' However, this may be, the notice states that 'a grace of thirty days during which the *policy will remain in force* will be allowed.' And unless the premium therein mentioned should be paid on or before the date therein mentioned, 'the policy *will have become void.*' This is language inconsistent with the idea that the policy was not in force at the time the notice was sent. [Stiepel v. German Am. Life Assn., 55 Mo. App. 235; Chicago Life Ins. Co. v. Warner, 80 Ill. 410.]"

The foregoing is said to contravene the following decisions of this court: Kregain v. Blake, 239 S. W. l. c. 500, 501, 292 Mo. 498; Hardin v. Lee, 51 Mo. l. c. 244; Perry's Admrs. v. Roberts, 17 Mo. 36; Brown v. Massey, 138 Mo. l. c. 533. Court of Appeals cases and 9 A. L. R. 984, are also cited; but those cases cannot furnish the basis of conflict which may be reached in this proceeding.

We have examined the Supreme Court cases cited. There is nothing in any of them, upon the facts therein

stated, with which respondents' ruling that the notice of the second premium was sufficiently identified on the facts upon which such ruling was based in anywise conflicts. It would serve no useful purpose to recite the facts in those cases. The failure to identify the instruments as genuine, which were there rejected as evidence, properly supported the respective rulings there made.

V. It only remains to consider the final contention of relator that the holding of respondents, that there was substantial evidence to show that relator *Waiver: Sufficient Evidence.* had waived the provision of the policy, under which such policy automatically terminated for failure to pay the premium notes, is in conflict with controlling decisions of this court. Upon this proposition respondents said:

"We think there is no question but that there was sufficient evidence to show a waiver of the forfeiture provisions. After the notes became due and were unpaid, defendant sought to collect the premium notes covering the full year's premium and notified the insured that the second year's premium was about to mature; that the insurance was in full force and that it would become null and void unless the premium was paid on or before a certain date mentioned. This was clearly a recognition that the policy had not yet lapsed. After insured's death the officer in charge of the records of defendant admitted the policy was in full force and effect. These records were not produced or introduced in evidence showing that any mistake had been made. There is clearly an inference that defendant's records show that the policy was in force at the date of insured's death as reported by the officer of the company (22 C. J. sec. 55, p. 115). That there was ample evidence of waiver of forfeiture is apparent."

Relator first cites Langdon v. Kleeman, 278 Mo. 236, l. c. 242, which thus states the character and amount of proof necessary to establish a waiver:

"Waiver is essentially a matter of intention. It need not be proved by express declarations, but may be shown by the acts and conduct of the parties, or even under some circumstances, by their non-action. Whatever parties do or forbear to do, therefore, their acts or omissions, to be construed as waivers, must be so manifestly consistent with and indicative of an intention to relinquish the particular right or benefit, that no other reasonable explanation of their conduct is possible. . . .

"Although it is evident from the general principles above announced that a waiver may be created by implication, the question as to whether or not it exists in a particular case, being one of intention, must be determined by the facts and circumstances of that case."

For the same purpose relator cites Schwab v. Yeoman, 264 S. W. l. c. 692. There RAGLAND, J., said: "A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part."

Thus we have late announcements from each division of this court. They go no further than to hold that the proof on the question of waiver must tend to indicate clearly and unequivocally that the party against whom waiver is asserted entertained the purpose to waive the right in question. Like any other question of fact it is for the determination of the trier of the facts. We are not able to say that respondents contravened the rule as announced in these cases. Under the terms of the policy the insured's default in the payment of the premium notes terminated the liability of the relator under the policy, unless it intentionally waived such default. Its acts, in seeking to collect the notes *in full* and in sending out notice that the second annual premium would be due September 14th, and that the policy would be void unless the second annual premium was paid, were referable to only one of two positions of relator, to-

wit: Either waiver of the default or an effort to se-
cure the re-instatement of the insured. There is no
evidence that re-instatement was the purpose of relator.
There was no suggestion to the insured that he furnish
evidence of his then insurability. The evidence that the
assistant secretary reported the policy to be in force
after insured's death lends support to the theory of
waiver. Relator's suggestion of mistake, because in-
sured had another policy, is not impressive. The sec-
retary reported the correct date when the second pre-
mium upon the policy in question would be due. This
fact tends to show that he examined or had another ex-
amine the record of the policy in question.

We cannot say that respondents' ruling, that the
evidence, tending to show an intentional waiver upon
relator's part, made a case for the jury, is in conflict
with the rule announced in either the Langdon or Schwab
cases. There is nothing in Ashbrook v. Life Ins. Co.,
94 Mo. 72, with which respondents' opinion conflicts.
Under this point relator cites two Court of Appeals
cases (not out of harmony in any way with respondents'
opinion) and cases from other jurisdictions. The cases,
other than decisions of this court, are not of value upon
the question of conflict.

VI. We have carefully considered all the cases
cited by relator, which are in any way controlling here,
and do not find that the opinion of respondents conflicts
with any controlling decision of this court, in any of
the particular grounds upon which such opinion has
been assailed by relator. It, therefore, becomes our
duty to quash our writ of *certiorari* issued herein. It
is so ordered. All concur.