JULIA MARIE GARVIN, RESPONDENT, v. UNION MUTUAL LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—79 S. W. (2d) 496.

St. Louis Court of Appeals. Opinion filed March 5, 1935.

*Jones, Hocker, Sullivan, Gladney & Reeder* and *Warren F. Drescher, Jr.,* for appellant.

*John P. Griffin* for respondent.

McCULLEN, J.—This suit was brought by respondent (plaintiff) to recover a death benefit under a policy of insurance issued by appellant (defendant) on the life of Edward L. Huthsing, plaintiff's father. Upon the trial of the cause before the court and a jury, there was a verdict for plaintiff and against defendant in the sum of $824.39. From the judgment rendered thereon defendant appeals.

Plaintiff's petition alleged that defendant, a Maine insurance company duly licensed to do business in this State, issued its policy of insurance No. 119809 on the life of Edward L. Huthsing, wherein it promised to pay to Mary Huthsing, wife of Edward L. Huthsing, the sum of $2000 in the event of the death of Edward L. Huthsing while said policy was in force; that Mary Huthsing died and that on the 4th of October, 1929, plaintiff, the insured's daughter, was named as beneficiary in the policy.

The petition alleged that the policy was issued to the insured in

consideration of the payment of premiums of $61 per year, and that after the premiums were paid for twenty years no further premiums should be due or payable, and that said insurance would then be paid up; that the insured paid the premiums on the policy for twenty years, and in October, 1916, no further premiums were due thereon.

The petition alleged that the insured died on November 14, 1930; tha plaintiff notified defendant of the insured's death and made proof of same, but that defendant refused to pay the claim; that defendant had the policy in its possession, and, therefore, plaintiff was unable to file it with the petition.

The petition further alleged that the insured borrowed from the defendant the sum of $1223.26 on January 15, 1929, and forwarded to defendant, as security therefor, the policy described, and that the net interest due defendant on said loan amounted to $48.78, making a total of loan and interest of $1272.04, leaving a net balance due plaintiff on the policy of $727.96 for which amount plaintiff prayed judgment with interest thereon at six per cent. Plaintiff also asked for ten per cent of the amount of said claim as damages, and $300 as a reasonable attorney's fee because of defendant's vexatious refusal to pay the claim.

Defendant filed an answer in which it admitted the issuance of the policy; that plaintiff was the beneficiary; that the insured paid the premiums on the policy for twenty years, and that it became fully paid up on October 15, 1916. The answer also admitted that the insured borrowed from the defendant on the policy the sum of $1223.26 on January 15, 1929, and that the insured died on November 14, 1930. Following the above admissions, defendant's answer denied each and every other allegation in plaintiff's petition.

For further answer, the defendant alleged that on January 15, 1929, the insured requested defendant to loan him under the policy the sum of $1223.26, which was the amount of the loan value or reserve on the policy on that date; that the insured executed and delivered to defendant a loan agreement evidencing said loan, which was attached to the answer and marked Exhibit A. It was alleged that the insured assigned and transferred the policy to defendant in conformity with the loan agreement, whereupon the defendant loaned the insured the sum of $1223.26 on the policy.

The answer further alleged that it was expressly stipulated and agreed by the insured in the loan agreement that if the interest on the loan was not paid when due the defendant would apply the loan value of the policy to the payment of the interest as it became due, until such time as the full amount of the loan, with interest, should equal the then cash value of the policy, whereupon the policy should become forfeited to defendant.

It was further alleged in the answer that no interest was ever paid on the loan either by the insured or by any one for him; that the interest due on the loan on October 15, 1930, amounted to $61.16; that on that date there was apportioned to said policy as a dividend thereon the sum of $12.38 which defendant allowed and applied as a credit on the interest due under the terms of said loan agreement, and that after allowing such credit said loan, with interest thereon, on October 15, 1930, amounted to the sum of $1272.04; that the cash value of the policy on the last named date amounted to the sum of $1272 and that as the amount of said loan, with interest, on October 15, 1930, after allowing as a credit thereon the aforesaid dividend of $12.38, was equal to and in excess of the cash value of the policy on that date, the policy, in conformity with the loan agreement, was forfeited to the defendant company on that date and was not in force on November 14, 1930, the date of the death of the insured.

Plaintiff filed a reply in which she denied each and every allegation in defendant's answer, and for further reply alleged that the policy issued was not forfeited on October 15, 1930, but that defendant, long after that date, as it had been customary for it to do for many years previous, was inducing and requesting the insured to pay the interest on the loan mentioned in plaintiff's petition, and that defendant thus and thereby waived any right that it may have had to forfeit said policy, and because of the fact that it was requesting and attempting to collect said interest from the insured after the same became due and unpaid, defendant was thereby estopped to claim that it forfeited the policy, and that on account of said waiver and estoppel the policy was in force on November 14, 1930, on which date the insured died, and that defendant further waived and is estopped to forfeit the policy because it required the plaintiff to make proof of death under said policy.

Plaintiff's reply also contained allegations raising other issues, but since plaintiff did not ask the court to submit them to the jury, it is unnecessary to refer to them here.

The case was submitted to the jury for plaintiff on the theory that defendant waived its right to forfeit the policy, this theory being embodied in two instructions offered by plaintiff, which the court gave.

Plaintiff's instruction No. 1, after requiring the finding of certain facts not necessary to be noticed here, told the jury that if they found that the interest on the loan in question came due on October 15, 1930, and that defendant had accepted interest on previous occasions after it became delinquent, and that defendant, through its agent, wrote the insured on November 7, 1930, reminding him that said interest was due and requesting that he pay it, and that de-

fendant did not attempt to forfeit the policy until after the death of the insured, then they "may find that defendant waived the prompt payment of said interest due October 15, 1930, and is estopped to claim that the policy was forfeited on November 14, 1930, and the plaintiff is entitled to recover the difference between the amount of the loan and interest and the amount of the policy."

Plaintiff's instruction No. 2, told the jury, among other things, that if they found that when plaintiff notified defendant of the death of the insured defendant did not then claim the policy was not in force, and furnished blanks to plaintiff to make proof of the death of the insured, and that plaintiff prepared and had said blanks filled out and submitted them to defendant, "then you may find the defendant waived its right to cancel the policy, and is estopped to set up the same as a defense."

The only instruction requested by defendant was a peremptory instruction in the nature of a demurrer to the evidence at the close of all the evidence, which the court refused to give. Plaintiff abandoned the issue of defendant's alleged vexatious refusal to pay, as well as all other issues except waiver, as referred to in her two instructions above mentioned.

Defendant contends that its demurrer at the close of all the evidence should have been sustained for the reason that the evidence shows that it was legally entitled to and did forfeit the insurance policy in accordance with the loan agreement made by the insured on January 15, 1929. Defendant argues that an agreement, such as the one involved herein, between a policy holder and an insurance company by which title to a policy is transferred to the insurer as collateral security for a loan, wherein there is a provision that if at any time the amount of the indebtedness should equal or exceed the value of the policy of insurance the liability of the insurance company on the policy should terminate, is a valid agreement, and strongly insists that the evidence conclusively showed that defendant did nothing to waive its right, under the loan agreement, to forfeit the policy.

Plaintiff contends that even though defendant was entitled to forfeit the policy, the evidence is overwhelming that it waived that right as it was customary and usual for defendant to do, and particularly waived that right by the conduct of its general agent and manager in writing a letter to the insured, dated November 7, 1930, calling the insured's attention to the fact that the interest on his loan was overdue since October 15, 1930, and also in preparing and requiring plaintiff to fill out proofs of death without making any claim of a forfeiture of the policy, and by defendant's customary conduct for many years of renewing the loan after it became delinquent.

The policy involved in this action was issued by defendant to the insured on October 16, 1896. Defendant promised therein to pay to the beneficiary the sum of $2000 on proofs of death of insured. The premiums thereon for twenty full years were paid, and on October 16, 1916, the policy became paid up for the remainder of the life of the insured. The evidence disclosed that on January 15, 1929, the insured borrowed $1223.26 from the defendant and assigned the policy to the defendant as collateral security for the repayment of the loan. The loan was evidenced by a loan agreement executed by the assured on January 15, 1929, which provided, among other things:

"That when, if ever, all premiums required by the policy have been fully paid and the interest due on the loan evidenced hereby is not paid on the day it falls due (no period of grace being allowed for such payment), the company shall apply the loan value of said policy to the payment of the aforesaid interest as it from time to time becomes due until such time as the full amount of said loan, with interest, shall equal the then cash value of said policy, whereupon said policy shall become forfeited to said company."

According to the testimony of Edwin Baur, manager of defendant's St. Louis office, the insured made the first loan, on the policy in suit, in 1908, and made subsequent loans thereon in June, 1913, July, 1915, and November, 1927. The last loan thereon was made on January 15, 1929, being the loan involved in this suit. Mr. Baur testified that the loan of January 15, 1929, paid off the previous loan on the policy and also paid premiums on other policies which the defendant had issued to the insured, and that the insured at that time also got $50 in cash. When the interest on the last loan came due on October 15, 1930, which was the anniversary date of the policy, that interest was not paid. Thereafter, under date of November 7, 1930, Mr. Baur wrote to the insured as follows:
"Dear Sir:

"Have you overlooked the interest payment on policy 119809 that was due on the 15th ult., net amount due $48.78? You know there is no grace allowed on these interest payments.

"Respectfully yours,
"Edwin Baur, Manager."

The insured died on November 14, 1930, which, it will be noted, was seven days after the defendant's manager had called the insured's attention to the overdue interest payment.

Plaintiff testified that during the week following the death of the insured, she went to defendant's office in St. Louis with her husband, where she saw Mr. Baur, defendant's manager, who told her that there were four policies on the insured's life and told her the amount of them; that Mr. Baur said he would roughly guess how

much she was to receive because there were loans on the policies, and he gave her an estimate of what she would receive. She said that Mr. Baur ''quoted four policies as to the amount of them each.'' She was asked whether or not Mr. Baur said anything to her about the policy involved in this suit not being in force. She answered: ''No. He just gave us approximately what we would receive. He just gave it to us roughly.'' She further testified that the first information which she received that the defendant contended that the policy numbered 119809, the policy involved herein, was not in force was when she went to defendant's office to get the check for the insurance on said policy and three other policies after she had submitted the proofs of the insured's death.

With respect to her conversation with Mr. Baur concerning the policy involved herein, plaintiff was asked on cross-examination: ''How much of a loan did he say was on this $2000.00 policy?'' and answered: ''Around $1200.00. Then he figured up and substracted just roughly the amount from the four policies and he said that is about what we will receive.''

Plaintiff further testified that Mr. Baur made no statement to her whatsoever as to whether the loan on the policy which was due on October 15, 1930, had or had not been paid; that Mr. Baur said: ''I should be thankful to him that I had the insurance; that father had been delinquent in making payments.''

During the cross-examination of plaintiff, the following occurred:

''Q. Let me ask you this: Do you deny or do you just state you do not remember, Mr. Baur advising you that this policy 119809 for $2,000.00 was forfeited for the reason that there had not been any interest paid on it on October 15, 1930? A. Mr. Baur never said one word to us that day that we would lose the policy.''

James F. Garvin, plaintiff's husband, testified that about two or three days after the death of the insured, he went with plaintiff to the office of defendant where he saw Mr. Baur, defendant's manager; that Mr. Maur filled out the form for proof of death and wrote the numbers, dates and amounts of four policies at the top thereof, including the number 119809, which is the number of the policy on which this suit is based. The witness was asked whether or not he suggested to Mr. Baur that he (Mr. Baur) write the number 119809 in the proof, and answered: ''I emphatically did not suggest to him to write it in.'' He testified that Mr. Baur filled in the first page of the proof of death, and was asked whether Mr. Baur looked up any records before filling it in. He answered: ''He got his cards, similar to the card he got here today, and made the data off of those cards onto this blank.'' The witness was then asked:

''Q. Did Mr. Baur say anything to you about this policy we have

been talking about, namely, policy number 119809, not being in force?'' and answered: ''A. No; he did not, about not being in force.''

At this point the witness further testified:

''Q. He put it in the proof? A. Yes, sir. He put them down all together.

''Q. What was the first information that this policy was not in force? A. We got a telephone call from Mr. Baur on the 29th or 30th of November, and he stated that he had the check from the home office, and Mrs. Garvin and I went down to get the check, and at that time he said they refused to make payment on one policy.

''Q. Is that the first notice that you had of a claim that this policy was not in force? A. Yes, sir.

''Q. That was approximately how long after Mr. Huthsing died? A. He died on November 13th, and that was on November 30th.''

Mr. Garvin testified further that he had the second and third pages of the proof of death filled out and then took it back to Mr. Baur who was to have it notarized and send it to the home office; that plaintiff received the check for the three other policies from the defendant on the 30th of November, but that Mr. Baur stated at that time that defendant refused payment on the fourth policy.

Edwin Baur, defendant's St. Louis manager, testified that he wrote the numbers of the four policies on the form for proof of death when plaintiff and her husband were in his office after the death of the insured; that he got the information for that purpose from plaintiff and from his records; that he told plaintiff's husband at that time that he did not know whether policy No. 119809 was in force or not for the reason that the full reserve was borrowed on that policy and the interest was not paid, but if it was in force through any reserve or any reason, the company would pay the claim. He stated that the handwriting on the claimant's certificate, which is also referred to herein as proof of death, was his handwriting; that he wrote the numbers of the four policies, with the dates and amounts thereof, at the top of the proof of death including policy No. 119809 dated October 15, 1896.

On cross-examination, Mr. Baur testified as follows:

''Q. Now, let me ask you again Mr. Baur. When you made out these proofs of death, don't you know that you told Mrs. Garvin, the beneficiary in this case, that all of those policies were in force? A. No. I couldn't state that. Do you want me—

''Q. (interrupting) That is enough.

''Mr. Drescher (interrupting): Now, let him explain it.

''Witness: I did not know whether that 119809 was in force, for the reason that he had the full reserve borrowed on the policy, and I wasn't sure whether that was in force or not. It was up to the home office.

"Q. As far as your office was concerned, it was in force? A. No. I didn't know."

Harold D. Lang, secretary of the defendant company, testified by deposition concerning the four policies upon which claims were made after the death of the insured, and said:

"Three were paid as death claims and one policy No. 119809 was forfeited on October 15, 1930. The reason for the forfeiture of this policy was no payment of interest due on loan on that date in accordance with the terms of the loan certificate therefor."

John O. Burke, chief clerk of cash loans on policies of the defendant company, testified by deposition that on January 15, 1929, at the time the last loan on the policy was made, the insured was indebted to defendant in the sum of $1270.33, and that said last loan was made to the insured in part payment of that indebtedness to the amount of $1223.26, and that the insured settled the balance of his indebtedness by paying defendant $47.07 in cash; that five per cent interest was charged on the loan. He stated that the interest due October 15, 1929 of $45.88 was paid to defendant, but no subsequent payment of principal or interest was made. He further testified that:

"On October 15, 1930, accrued interest was due the company of $61.16, and the loan department, being informed by the actuarial department that the additional value of the policy October 15, 1930, was not sufficient to pay the interest then due the company of $61.16, and as such interest was not paid by the policyholder, the policy was forfeited by the company under the terms of the loan certificate thereon."

Mr. Burke further testified that the figures given him by the actuarial department as of October 15, 1930, showed the cash value of the policy in question to be $1272. The indebtedness on that date due the company was $1272.04, and was computed by the amount of the existing loan of $1223.26, plus interest due the company of $61.16, making a total of $1284.42, less dividend credited on the indebtedness, $12.38, net amount due $1272.04.

The evidence shows that on the form for proof of death, concerning which plaintiff and her husband as well as Mr. Baur testified, the notation written thereon by Mr. Baur with respect to the policy involved herein was stricken out and an abbreviated word added, so that the notation at the time of the trial appeared as follows:

"119809 Oct. 15 - 1899 - 2000 Surrd."

Mr. Baur testified that he did not draw the line through the above notation, but believed that it was done at the home office of defendant.

In passing upon the court's action in overruling defendant's demurrer to the evidence at the close of all the evidence, it is our clear duty under the long established rule to take plaintiff's evidence as

true so long as it is not impossible or entirely beyond reason, also to disregard defendant's evidence wherein it is in conflict with plaintiff's evidence, and give plaintiff the benefit of every reasonable inference arising from all of the evidence. [Armstrong v. Mobile & O. R. Co., 331 Mo. 1224, 55 S. W. (2d) 460, 462; Maginnis v. Mo. Pac. Ry. Co., 268 Mo. 667, 675 187 S. W. 1165; Malone v. Ry. Co., 220 Mo. App. 9, 15, 285 S. W. 123; Daniel v. Aetna Life Ins. Co., 225 Mo. App. 357, 36 S. W. (2d) 688.]

In view of the issue of waiver of forfeiture upon which this case was tried, we must bear in mind the principle that a forfeiture of rights under an insurance policy is not favored by the law at any time, and that an attempt at forfeiture by an insurer is looked upon with disfavor when such forfeiture is sought to be declared after the contingency has arisen against which the insurer undertook to insure, and the facts upon which the forfeiture is alleged to be based were within the knowledge of the insurer prior to the happening of the event giving rise to the insurer's liability under the terms of the policy.

Defendant argues earnestly and at length to the effect that there was no evidence of defendant's waiver of its right to forfeit the policy under the loan agreement herein, basing its contention upon its own evidence and the testimony of witnesses who testified in its behalf. The argument presented by defendant is replete with inferences favorable to defendant drawn from the testimony of its own witnesses.

It is sufficient for us to say in this connection that we are not permitted under the rule above stated to indulge in any inferences favorable to defendant in determining whether or not the court was in error in ruling that it was a case for the jury to decide. On the contrary, we must disregard defendant's evidence where it contradicts plaintiff's evidence and give plaintiff the benefit of every favorable inference arising from all the evidence. Furthermore, it has been held that inasmuch as forfeitures are not favored by the law, slight circumstances will be sufficient to establish a waiver of the grounds for forfeitures.

In Francis & Hunter v. A. O. U. W., 150 Mo. App. 347, 356, 130 S. W. 500, this court said:

"It is frequently said that equity abhors forfeitures and it may be said as well that they are not favorites even in courts of law. The policy of the law is not to aid the forfeiture of a right once established."

In the same case, the court said:

"There can be no doubt that, more or less influenced by this thought, the general doctrine obtains throughout the law of insurance to the effect that valuable rights shall not be denied on the ground

of forfeiture, if slight evidence sufficiently indicates a purpose on the part of the one in whose favor the forfeiture is stipulated not to enforce it.'' [Francis & Hunter v. A. O. U. W., *supra*, l. c. 356.]

In Daniel v. Aetna Life Ins. Co., 225 Mo. App. 357, 364, 36 S. W. (2d) 688, 692, the court said:

''Much of the briefs on both sides is devoted to a discussion of the facts and the conclusions reached are dependent upon whether the jury believed one state of facts or the other. Here we are concerned only with the question of whether or not there was any substantial evidence sufficient to support a finding of waiver. The law does not favor forfeitures any more than equity, and it is held that slight circumstances will suffice to establish a waiver of the grounds for °orfeitures. . . . In Keys v. Knights & Ladies of Security, 174 fo. App. 671, 680, 161 S. W. 345, 348, the court said: 'Slight evide\ce, indicating an intention to waive, will be sufficient to prevent forfeiture from taking effect and thereby defeating valuable rights. ''

In S₁ earlock v. Mutual Life Ins. Co., 193 Mo. App. 430, 436, 182 S. W. 8 ', 91, the court quoted with approval from Keys v. Knights & Ladies of Security, 174 Mo. App. 671, 680, 161 S. W. 345, 348, as follows:

''Slight evidence, indicating an intention to waive, will be sufficient to prevent a forfeiture from taking effect and thereby defeating valuable rights.''

Applying these principles to the facts in evidence in the case at bar, we are of the opinion that the court was warranted in submitting the case to the jury on the question of whether or not defendant, by its conduct, waived its right to forfeit the policy of insurance.

The testimony of Mr. Baur, defendant's manager, shows that it had been customary for the insured to permit himself to become delinquent in the payment of interest on his loans, as well as in the payment of his premiums on the policy. Referring to the insured's customary delinquency, Mr. Baur testified:

''He was always a little negligent in paying his premiums. I always had to call his attention to his premiums being due and past due, and I frequently had to call on him or write him letters to that effect.''

With respect to the insured's delinquency in the payment of interest on his loans, Mr. Baur testified:

''Yes. He has been careless. It took a lot of energy to keep his insurance in force.''

In response to questions by defendant's counsel, Mr. Baur testified that the insured had been delinquent in his interest payments on loans prior to November 7, 1927. He was then asked by defendant's counsel:

"Q. Well, when you say that he was delinquent on any interest payments prior to November 7, 1927, when was he delinquent?" and answered: "He was delinquent about nearly every time."

The evidence shows that the interest on the loans always fell due on the anniversary of the policy, which was October 15th of each year.

It appears that prior to the loan agreement of January 15, 1929, another loan agreement had been executed on March 18, 1927, which was more than five months after the interest had become due on a loan prior to the one last named.

The evidence also shows that the loan of January 15, 1929, which was a renewal of a prior loan, was made three months after the interest on the prior loan had become due. Furthermore, it appears that at the time the loan of 1927 was renewed on January 15, 1929, there was not sufficient cash reserve on the policy to pay the interest, and the insured himself paid $47.07 in cash to make up the required amount.

The evidence clearly shows a course of dealing between defendant and the insured which could very reasonably have led the insured to believe that it was not necessary for him to pay promptly the interest due on his loan.

Giving full consideration to the fact that defendant required the insured to submit to a medical examination prior to the loan made in January, 1929, we nevertheless believe that under all the evidence, the court would not have been warranted in declaring as a matter of law that defendant had forfeited the policy on October 15, 1930, and that as a matter of law it had not waived such forfeiture.

The course of dealing between defendant and the insured with respect to the payment of delinquent interest on the loan must be borne in mind when we consider Mr. Baur's letter of November 7, 1930, to the insured calling his attention to the fact that the interest on his loan had been due since the 15th of the preceding month, and telling him that the net amount due thereon was $48.78. That letter contained no reference whatsoever to the forfeiture now claimed by defendant to have been made at its home office twenty-two days before the date of the letter. Neither did it make the slightest reference to the necessity of a medical examination of the insured or reinstatement of the policy. It is true the letter concluded with the cautionary words "You know there is no grace allowed on these interest payments," but that language cannot be said to indicate either a forfeiture or an intention to declare a forfeiture of the policy, or that a medical examination of the insured would be required, in view of the evidence showing that on previous occasions defendant had permitted the insured to become delinquent in the payment of interest and had accepted payment thereof long after it was due without any forfeiture of the policy being claimed.

In addition to the evidence showing the course of dealing between defendant and the insured, it appears that Mr. Baur, defendant's manager, required plaintiff to make proofs of the death of her father to meet the conditions of the policy in that respect.

The general rule as to this matter is stated in 37 C. J., p. 538, Section 271, as follows:

"Where insurer requires the furnishing of proofs of death at some trouble and expense, it is stopped to insist on a forfeiture unless the ground of forfeiture is unkown to insurer at the time."

In 14 R. C. L., page 1197, Section 376, the rule is stated as follows:

"It is the general rule that when an insurer, with knowledge of any act on the part of the insured which works a forfeiture, enters into negotiations with him which recognize the continued validity of the policy, and thus induces him to incur expenses or trouble under the belief that his loss will be paid, the forfeiture is waived. This rule is most frequently applied to a request for proofs of loss from the insured, after knowledge of a forfeiture, but it is essential that the insurer have knowledge of the ground of forfeiture at the time."

In Shearlock v. Mutual Life Ins. Co., 193 Mo. App. 430, 436, 182 S. W. 89, 91, the court quoted with approval from Titus v. Insurance Co., 81 N. Y. 410, as follows:

"But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured, by virtue thereof, to do some act or incur some trouble or expense, the forfeiture is, as a matter of law, waived."

In Keys v. Knights & Ladies of Security, 174 Mo. App. 671, 680, 161 S. W. 345, the court said:

"A waiver of forfeiture may be inferred when the insurer, after knowledge of the act of forfeiture, requires the assured, by virtue of the requirements of the policy, to do some act or incur some expense."

Defendant admits that plaintiff was required by Mr. Baur to make proofs of death, but contends that Mr. Baur did not at that time know that a forfeiture had been effected at the home office of the company, and, therefore, his actions did not constitute a waiver of the forfeiture. We are unable to agree with that view. Mr. Baur was in charge of the company's business not only in connection with the making of proofs of the death of the insured, but also in connection with the loan involved and the payment of interest thereon by the insured.

Under the evidence herein, "He must, therefore, be regarded as the *alter ego* of the company, and what he did was the same as if

the company was present acting for itself.'' [James v. Mut. Reserve Fund Life Assn., 148 Mo. 1, 11, 49 S. W. 978.]

Defendant not only does not deny, but on the contrary actually claims and proves, that it knew of the grounds of forfeiture on October 15, 1930, when the interest on the loan, which was due on that date, was not paid. Notwithstanding such knowledge by defendant, its own manager, its *''alter ego,''* wrote a letter to the insured calling his attention to his default but said nothing whatsoever in the letter about the forfeiture of the policy, which defendant now claims had long before been declared and noted in its records at its home office.

In Keys v. Knights & Ladies of Security, 174 Mo. App. 671, 679, 161 S. W. 345, the court said:

''If the company ought to have known of the facts or with proper attention to its own business would have been apprised of them, it has no right to set up its ignorance as an excuse.''

In the case at bar, Mr. Baur, acting for and in behalf of defendant in the very transaction involved, ought to have known of the facts concerning the grounds of forfeiture which defendant now claims and proves it knew of long before Baur wrote his letter and long prior to the death of the insured, and defendant had no right to set up as an excuse the ignorance of such facts on the part of its own manager. To give our approval to defendant's contention that the court erred in submitting this case to the jury, on the evidence in this record, would be equivalent to our saying that an insurance company could treat a policy of insurance as being in force and effect as long as the insured continued to live and there was any possibility in the judgment of its agents of procuring an additional payment of interest on a loan, but, if the insured should die after the interest had become due and was not paid during such period of possibility of payment, the company could treat the policy as having been forfeited because of the default in the payment of such interest. It is sufficient to say that such an equivocal position on the part of an insurance company when called upon to pay a loss is not permitted or looked on with favor. [O'Donnell v. Kansas City Life Ins. Co. (Mo. App.), 222 S. W. 920, 922. See also Thompson v. St. Louis Mut. Ins. Co., 52 Mo. 469, 472; Hanley v. Life Assn., 4 Mo. App. 253, 258.]

It is true there was evidence adduced by defendant tending to show that there was no waiver by defendant of its right to forfeit the policy under the terms of the loan agreement, but it is not our province on this appeal to weight the evidence or to determine whether or not the jury's conclusion was supported by the greater weight of the evidence. Our duty on this record is limited to determining whether or not there was sufficient evidence to warrant the court in submitting the case to the jury.

920

In view of all the facts in evidence, we are of the opinion that the court committed no error in submitting the case to the jury on the question of defendant's waiver of its right to declare and enforce a forfeiture of the policy. [O'Donnell v. Kansas City Life Ins. Co. (Mo. App.), 277 S. W. 973, 975; State ex rel. Kansas City Life Ins. Co. v. Trimble, et al., 310 Mo. 446, 466, 276 S. W. 1020, 1025.]

The judgment of the Circuit Court is, therefore, affirmed. *Hostetter, P. J.*, concurs. *Becker, J.*, not sitting.