PHŒNIX MUT. LIFE INS. CO. OF HARTFORD, CONN., v. HARMEGNIES.
·No. 11579.

Circuit Court of Appeals, Eighth Circuit.
March 5, 1940.

Web A. Welker, of St. Louis, Mo. (James C. Jones, Lon O. Hocker, James C. Jones, Jr., and Vincent L. Boisaubin, all of St. Louis, Mo., on the brief), for appellant.

Robert D. Evans, of St. Louis, Mo. (J. Porter Henry and Hennings, Green, Henry & Hennings, all of St. Louis, Mo., on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

WOODROUGH, Circuit Judge.

The plaintiff in the court below recovered a verdict and judgment as the beneficiary named in a five thousand dollar life insurance policy issued by the defendant insurance company on the life of her husband. He came to his death during the period for which the premiums were fully paid, but the company denied liability on the ground that the insurance had been obtained by false, fraudulent and untrue representations, knowingly and fraudulently made by the deceased in applying for the insurance. It alleged that he had to his knowledge been afflicted during the five years preceding his insurance application with ulcerative colitis, a disease of the stomach and intestines; that in his application he had represented that he had not had any disorder of the stomach or intestines, and that the ulcerative colitis, which in truth and in fact he had and knew that he had caused or contributed to his death. On this appeal the company asserts error (1) in the trial court's overruling of its motion for directed verdict made at the conclusion of all the evidence; (2) in instructions given; and (3) in a ruling at the trial.

(1) Directed verdict refused. (a) There was evidence that when the insured applied to the company for insurance he was about thirty-seven years old and was employed at St. Louis as an assistant general manager. He had the appearance of being in good health and the answers he gave to the questions in the application blanks reflected that he had no disease or disorders of the stomach or intestines; that he had been examined for insurance in January, 1938, and had obtained insurance in the amount of $7,893 from the Penn Mutual Insurance Company in that year, but that two years previously, in 1936, he had suffered from rectal abscess and had been operated upon by Doctor Motter and hospitalized for three months at the West Surburban Hospital in Oak Park, Illinois. In view of the disclosure of the operation and hospitalization, the company's medical director sent the applicant a form letter to be submitted to Doctor Motter, as follows:

"Attending Physician's Letter
"May 4, 1938
"Dr. T. I. Motter
"715 Lake Street, Oak Park, Illinois

"I am making application for insurance in the Phoenix Mutual Life Insurance Company of Hartford, Connecticut, and the Medical Director would like more explicit information than I am able to give concerning the illness for which you treated me in Jan. Feb. Mch. and April 1936
Month Year

"Will you, therefore, kindly give below a brief statement of all the facts that in your

opinion would assist in consideration of my application. Inclosed for your reply is an envelope addressed to the Medical Director of the Phoenix Mutual Life Insurance Company, Hartford, Connecticut.

"Very truly yours,
"(Sgd.) Paul E. Harmegnies."

On May 6, 1938, Doctor Motter replied:

"To Medical Director of the Phoenix Mutual Life Insurance Company, Hartford, Connecticut.

"Regarding Mr. Paul E. Harmegnies.

"Dear Doctor: The above named person was under my observation from

| January 7th | 1936 | to | April 6th | 1936 |
| Month | Year | | Month | Year |

Diagnosis: Colitis. Rectal Fistula

Results: Recovery. Date of Recovery April 5th, 1936 last visit

Particulars will be appreciated: Chief Symptoms; Physical Signs; Laboratory & X-ray Findings; Patient had been under care of Christian Scientist, and carried a temperature of 102 to 103 degrees. Had a large rectal abscess and fistula which was discharging freely. Liquid bowel movements of 10 to 15 a day. Sent· immediately to hospital where he remained to March 25th, 1936

Operation, if any. Operation. January 9th, 1936. Hospital to March 25th, 1936.

"(sgd.) Thos. I. Motter M.D.
"715 Lake Street, Oak Park, Illinois
"Date May 6th, 1938
-no papers. 1872 Chicago Homeopathic Med. Coll. 1897 M.S.E.—Rush Med. 1899-AB. L.S.-Surgery-Amer. Coll. Surgeons."

There was evidence that the frequent bowel movements noted by Doctor Motter in his letter were symptomatic of colitis and Doctor Motter stated that colitis had been present in the applicant. The company's medical director testified that there are two types of colitis, easily distinguished from each other, "mucous colitis", which is fairly common, inconvenient and not particularly serious but involving nervous factors, and "ulcerative colitis", which is very serious, with a high mortality rate. He testified that he was not satisfied with

the statement given him by Doctor Motter and considered the diagnosis "colitis" not clear. He accordingly wrote Doctor Motter again, as follows:

"May 10, 1938
"Dr. Thomas I. Motter
"715 Lake Street
"Oak Park, Illinois
"Dear Dr. Motter: Paul E. Harmegnies.

"We have received the review of your record in the case of Mr. Paul E. Harmegnies, in which you state that you treated him from January 7, 1936 to April 6, 1936 for colitis and rectal fistula.

"Before issuing a life insurance policy with disability provision to Mr. Harmegnies, we would like to have more detailed information concerning the history of colitis. We shall be interested to know the duration of the colitis and the diagnosis of the type of colitis which was present; also if there was any history of previous attacks or chronic colitis.

"We are crediting your account a fee of $3.00 for the review and record of physical history in this case.

"Very truly yours,
"Assistant Medical Director.
"RAS:LDB"

Doctor Motter replied:
"May 12th, 1938
"Dr. Robert A. Goodell
"Phoenix Mutual Life Insurance Co.,
"Hartford, Conn.
"My Dear Doctor:

"Replying to your inquiry 'as to the character of the Colitis from which Mr. Harmegnies suffered, while under my care at West Suburban Hospital, from January 7th, to April 6th, 1936, would say that it was a straight case of Mucus Colitis of a very severe type due largely because of having had no medical treatment, he having been under the care of a Christian Scientist Practitioner for some time.

"The stool examination showed no Amoeba Coli, no Amoeba Histolytica, No Ova and no T. B. The Examination showed pus, mucus, blood and leucocytes. A Wasserman was made which was negative. His complete recovery evidently bore out our diagnosis.

"Hoping this answers your question fully, I remain
"Respectfully
"Thos. I. Motter M.D.
"TIM:MC"

The medical director also requested a Doctor Beam of St. Louis to make a

medical examination of the applicant and Doctor Beam accordingly had the applicant before him and made tests upon which he reported his conclusions to the medical director in the form of answers to questions and also stated that, basing his judgment on the physical condition of the applicant, the risk impressed him as being "First Class." Under the heading "General Remarks" the doctor stated "Rectum reveals no signs of rectal disease at present time—no hemorrhoids."

The applicant had applied for a combination policy to cover disability as well as life insurance, but in view of the history of colitis which had been disclosed to it, the company declined to insure the applicant against disability but permitted him to amend his application to one for life insurance with double indemnity for accidental death. Such policy, being the one sued on here, was issued on or about May 17, 1938, and the insured came to his death on July 10, 1938, following an operation.

In his original application, dated April 19, 1938, it was stated that the applicant had no usual medical attendant and the wife testified that prior to that date she had been with him every day and that his condition was perfect. But between April 19th and May 2nd, 1938, when his later application was signed, the applicant had consulted a Doctor Klinkerfus of Normandy, Missouri, and in the later application he named that doctor as his medical attendant and authorized the company to refer to him. Doctor Klinkerfus testified on behalf of the company that the insured first called at his office for treatment on April 23d, 1938. The doctor treated him on that date and treated him again on May 4th at the doctor's office and again at the home on May 7th. The doctor's testimony was that he diagnosed the complaint as ulcerative colitis and that the patient himself stated that his trouble was ulcerative colitis and that although he had not been under the care of a physician since his operation, that "he had been treated for ulcerative colitis years before". The doctor said the patient "had a knowledge about ulcerative colitis that was probably almost equal to my own, from past study of the case and diets and things that he had been put on by probably other physicians". But opposing the doctor's testimony, the wife testified that she was present when the doctor came to their home in April, 1938, and that although she could not remember the exact

words, that the idea of what he said was that her husband's condition was not serious, that he could be about if he wanted to be, that he would have to follow his diet and not do anything strenuous, and that if he took it easy and followed his diet he would be all right and that nothing was said about ulcerative colitis. She said that although her husband had "this little sickness" or "this little spell in there where he was not feeling so well", "he was fine" and "went about his business" and "went bowling" with the company's bowling team and "was not really and truly ill until * * * around the 1st of June sometime". "He went around, looked at and tried out" automobiles with a view of buying one and bought and had one delivered on May 20th. They visited friends and drove out in the car throughout April and May, incurring gasoline bills to considerable amounts shown in evidence. She never heard the term ulcerative colitis until the insurance payment was refused.

Doctor Klinkerfus did not see the insured after May 7th but he was subsequently hospitalized at Faith Hospital in St. Louis and an operation was performed upon him just before he died to relieve him from ulcerative colitis. The immediate cause of death was a paralysis of the small intestine, which is something that can occur after an operation and may have been caused by the operation. It occasioned a fatal dilation of the heart. But ulcerative colitis was a contributing cause of death within the provisions of the insurance policy. The autopsy showed that there were numerous ulcers throughout the entire length of the colon and the expert opinion was that ulcerative colitis had existed long before the insurance was applied for.

■ Although it has been forcefully argued that no reasonable inference could be drawn from the evidence except the inference that the insured knew that he had ulcerative colitis when he applied for and obtained the insurance, we think the question was for the jury. The disease was shown to be a rare disease. Doctor Motter, who operated on the insured at the Oak Park Hospital and was then sixty-six years of age, had only seen four or five cases of it, though he said "you see hundreds of cases" of colitis other than ulcerative. There is nothing to establish that it is a disease generally known or understood outside the medical profession.

If the testimony of Doctor Klinkerfus stood alone it would compel the conclusion that the insured well · knew that he had ulcerative colitis when the insurance was applied for, but it was competent for the jury to compare the statements attributed to the doctor by the wife and to consider the appearance, actions and course of living of her husband up to, during and after his contacts with the . doctor. The physical examination made by Doctor Beam and that doctor's answers to the forty-five questions propounded to him, and his opinion that the applicant was a first class risk, were also before the jury. The jury also had the fact before it that when the applicant made his second application for insurance, he informed the insurance company that he then had a medical attendant employed. He named and gave the . address of Doctor Klinkerfus and authorized the company to refer to the doctor and it was for the jury to weigh the probabilities whether he would have done so if he had in fact informed that doctor that he was suffering from ulcerative colitis, diagnosed as such by the doctor and believed by that doctor to be an incurable disease. There was also the applicant's declaration made to the company on May 17th that he was then in good health so far as he knew and believed.

The statute of Missouri, Sec. 6937, R.S. 1909, Mo.St.Ann. § 5732, p. 4373, provides: "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury."

Under the statute, the issue of misrepresentation presented by the answer in this case and all the evidence, it was a question for the jury whether the insured had knowingly deceived the insurance company by falsely representing in his application for insurance that he did not have ulcerative colitis.

(b) It is also contended for the insurance company that it was entitled to a peremptory instruction in its favor on the proof of the autopsy and history of the case that ulcerative colitis was and long had been present in the insured. Its position is that the fact of the existence of the disease shown by such autopsy avoided the insurance, regardless of whether or not the applicant knew of it when he applied for the insurance and answered the questions propounded to him in the application blanks. It argues that the law of Missouri is such that however innocent of fraud the applicant may have been' in applying for and obtaining the policy sued on, the insurance is none the less void if there was in fact a disease latent in the applicant that contributed to his death. The conclusion is said to be compelled by the following Missouri decisions. Kern v. Supreme Council, 1902, 167 Mo. 471, 67 S.W. 252 ;. Burgess v. Pan-American Life Insurance Co., Mo.Sup., 1921, 230 S.W. 315, 316 ;. Kirk v. Metropolitan Life Insurance Co.,. 1935, 336 Mo. 765, 81 S.W.2d 333.

Our study of the cited cases reveals no support for the contention. The Kirk case was a suit upon policies which contained the provision that there should be no. obligation upon the insurance company unless the insured was in sound health on. the date of the policy. The insured was. shown to have been suffering from consumption at and prior to the date of the policy, and she died of it. The condition. appearing in the policy when the insured accepted it was held to be a valid condition binding upon the insured and that there could be no recovery on the policies. There was no such condition in the policy sued on in this case. In the Kern case, the trial court gave peremptory instruction for the plaintiff in a suit upon a life insurance policy. The defendant pleaded and offered to prove that the applicant for the insurance had knowingly made false representations to obtain the insurance. It was held in the Supreme Court that there was. no defense because there was no allegation that the matter that was misrepresented. had contributed to the loss. The court's. comment that it made no difference whether the false representations had been knowingly or innocently made was related to the statute which forbade avoiding the policy unless the false representations. contributed to the loss. In the Burgess. case the policy contained a provision . similar to that in the Kern case, to the effect that no liability should attach "until it was duly delivered during the lifetime and good health of the insured". The court said that the real question in the case was. whether the insured was in good· health.

when the policy was delivered, and decided upon elaborate discussion of the testimony that the jury's verdict answering the question in the plaintiff's favor was supported by substantial evidence. It is because of the certainty of death and the uncertainty of life that insurance business exists. We have found no Missouri case where after loss the court avoided for misrepresentations such a policy as the one in suit if it was issued to one who frankly and fully answered all questions propounded to him to the best of his knowledge and made no concealment of matters known to him that were material to the risk.

■ The defense pleaded in this case was that the applicant for the insurance had knowingly and falsely made misrepresentation of a matter which contributed to his death. The proof showed that the matter referred to was ulcerative colitis which did contribute to his death. The company assumed the burden upon the defense it pleaded, and as the issue was for the jury the motion for peremptory instruction was properly denied.

■ (2) Instructions given. (a) The plaintiff claimed that although the insured did not know he had ulcerative colitis when he applied for and obtained the insurance, that the information given the insurance company had apprised it and it knew that he had the disease, The law in Missouri is settled that if the insurer had knowledge of the true state of the applicant's health at the time the contract was entered into, the policy will not be avoided, even though the application may have falsely stated matters which contributed to or directly caused the death of the assured. State v. Allen, 303 Mo. 608, 262 S.W. 43; Hodges v. American National Insurance Co., Mo. App., 6 S.W.2d 72; Garvin v. Union Mutual Life Insurance Co., 231 Mo.App. 904, 79 S.W.2d 496; Brummer v. National Life & Acc. Insurance Co., Mo.App., 59 S.W.2d 781. The court instructed the jury, i. a.: "Even though you may find from the evidence that the assured knowingly made false representations, yet if you further find that the defendant knew that said representations were false, fraudulent or untrue, and knew that the insured had suffered or consulted a physician with reference to an intestinal disease which caused or contributed to his death, but nevertheless demanded payment of and accepted premiums from the plaintiff after the acquisition of such knowledge or information, then your verdict should be for the plaintiff."

■ The company insists there was no evidence that it ever had any knowledge of the existence of ulcerative colitis in the insured and that the instruction was erroneous. The plaintiff relied upon the correspondence between the company's medical director and Doctor Motter and light claimed to be thrown upon that correspondence by the medical expert testimony concerning the disease, its nature and symptoms. The company's medical director testified that Doctor Motter's statement in his letter of May 12th, 1938, in reference to the applicant's colitis, that "it was a straight case of mucous colitis", was satisfactory to him and he "accepted his statement". He said that there was nothing in the record before him to indicate that the applicant might have had ulcerative colitis and that he would not have approved the issuance of the policy if there had been any intimation given to him that the applicant had had ulcerative colitis. But opposed to this, it is pointed out that Doctor Motter's letter was a communication by one scientific man to another and conveyed not only the doctor's bald conclusion but also the technical bases upon which it was intended that the medical director should draw his own conclusion. Doctor Motter had successfully operated for the fistula and rectal abscess and he wrote that the recovery of the patient tended to corroborate a diagnosis of mucous colitis. But Doctor Motter clearly stated in the letter that the colitis of the patient was "of a very severe type" and that the examination of the stool had showed pus and blood. The medical director admitted that it would be "possible" that the symptoms given him by Doctor Motter would show the existence of something more than mere mucous colitis. In answer to the question, "In mucous colitis would not the same discharge of pus, mucous, blood, etc. also be indicative of ulcerative colitis?" he answered, "Yes." Dr. Finnegan, a specialist in gastro intestinal diseases, testified that the term "mucous colitis" is loosely used and that the condition intended to be described by it should be called "colica ocoso". That it is simply a spasm of the bowel and that the spasm which may involve more or less of the intestine, throws out a lot of mucous but no pus or blood. The disease which includes an "honest-to-God inflammation of

the bowel" and which discharges pus and blood and is a very serious condition, is "ulcerative colitis."

There was testimony of doctors that the medical director would be justified in believing from Doctor Motter's letter of May 12th that the blood and pus there referred to had come from the fistula and rectal abscess from which the applicant had been suffering and not from ulcerative colitis. But it is urged for the plaintifi that Doctor Motter's letter answered an inquiry of the medical director which the director had limited entirely to the colitis, and that Doctor Motter's letter makes no reference to anything but the colitis. It is contended that the disclosure of the letter that there was blood and pus in the applicant's stool, and that the type of the disease was very severe, was all related to the colitis and meant that the discharging of pus and blood came from the colitis. Doctor Klinkerfus testified that "the presence of blood in the stool—made the differential diagnosis between the mucous colitis and the ulcerative colitis." Doctor Birdsall testified in response to the question,

"Q. Doctor, if, in that connection your inquiry was as to the type of colitis two years after the treatment, and the answer came back, 'mucous colitis', but the stool examination showed blood and pus, you still might suspect at least the presence of an ulcerative condition of the colitis? A. I would have to investigate, to find out.

"Q. You would have to investigate, to find out, and you would not rely upon his statement that it was a mucous colitis, entirely? A. Well, it would not be a practical thing to do."

On consideration of the whole evidence it can not be held that there was no evidence to support a finding that the insurance company had information of the true nature of the applicant's disease. We find no reversible error in the instruction.

(b) Complaint is made of portions of the court's charge to the jury on the ground that the court extended the plaintiff's right to recovery and restricted the defense to a greater extent than was justified by the Missouri misrepresentation statute, Sec. 6937, R.S.1909, Mo.St.Ann. § 5732, p. 4373, supra. The sole defense was that the applicant for insurance had knowingly misrepresented his condition and that the matter misrepresented had actually contributed to the death. The al-legations of the answer and the proof offered by defendant confined the inquiry to ulcerative colitis as the matter that had actually contributed to the death. The position of the plaintiff was that the insured knew that he had had a diseased condition in the lower extremity of his intestine and that it had been serious, requiring operation and hospitalization. This he fully disclosed to the company, not only by his own answers to questions, but also through technical reports of his physician. He thought he had fully recovered from the condition and there was direct evidence of Doctor Motter that he had recovered. More than two years later and while the application for insurance was pending, he had consulted Doctor Klinkerfus for an illness that included a running off of the bowels and some chill and fever which the wife described as "a little sickness" or "a little spell." Although the insured noted in his application the fact that he had employed Doctor Klinkerfus and referred the company to that doctor, he did not disclose the occurrence or incidents of this indisposition to the company. The testimony for the company was that the illness was in fact serious and a recurrence of ulcerative colitis. Appellant's argument is directed to that part of the court's charge which was to the effect that recovery could be awarded on the policy if the applicant knew that he had had a disease of the intestines, if he thought that the disease was not serious or that he had completely recovered from it.

But we are not persuaded that the jury was misled by the instruction in view of the evidence to which the statements of the charge were related and on consideration of the instructions as a whole. It necessarily results from the form in which insurance applications are presented that an applicant is neither required nor expected to record trivial or inconsequential matters which do not affect the risk. Within reasonable limits, the applicant is not justified in expatiating upon slight colds that he may have had, or casual and evanescent stomach growls or bowel looseness. Mucous colitis or colica ocoso was shown to be an ailment of that type, of no substantial consequence to a life insurance risk. The court's instructions made it very plain to the jury that if the applicant in this case knew that he had or had had ulcerative colitis, it was his duty to disclose it and the plaintiff could not recover in the case in the absence of

other circumstances. But the charge as it was related to the mucous colitis was not prejudicially erroneous. Security Life Insurance Co. v. Brimmer, 8 Cir., 36 F.2d 176; Wharton v. Aetna Life Insurance Co., 8 Cir., 48 F.2d 37.

■ (3) On the argument of the case to the jury the record discloses the following proceeding, and a ruling and comment of the court, which are assigned as error:

(Counsel for defendant arguing)

"Oh, talk about good faith in this case gentlemen! Talk about good faith! Something that Mr. Henry has not explained yet, which has no explanation: Why in the name of the Heavens didn't he bring on Dr. J. Roy Comptom and the other physicians who treated him in his last illness?

"Mr. Henry: Why, if the Court please, I object to that statement. He (Mr. Welker) had a perfect opportunity to bring Dr. Comptom. He admitted the Defendant's Exhibit No. 1, the death certificate of Mr. Harmegnies. There was no occasion to bring Dr. Comptom into this court. I think that is a very unfair statement.

"The Court: What doctor is that?

"Mr. Henry: He says we should have brought the doctor that was with him during his last illness.

"Mr. Welker: He evidently gave him some history.

"The Court: Sustain the objection. We had enough doctors in the case. Comment on their testimony."

Assuming that the company had a right to comment upon plaintiff's failure to call the doctors referred to, we find no prejudice in the court's refusal to allow the comment to go beyond what had transpired.

It appears that the doctors who attended the insured in his last illness had performed an unsuccessful operation upon him for ulcerative colitis and the causes of death were shown generally by the attending physician's certificate and with detailed particularity by the doctor who performed the autopsy. Whether the doctors referred to in the attorney's argument could have thrown any additional light appears entirely speculative. At any rate, the attorney did comment on the failure of the plaintiff to call the witnesses and did declare in the presence of the jury that the deceased had evidently given the attending doctor some history. The court did not direct the jury to disregard what the at-

torney had said to them and we can discern no possible prejudice to the defendant in the court's direction to the attorney to proceed with his discussion of the testimony of the several doctors developed before the jury.

The case was ably contested and the trial was fair. Finding no prejudicial error, the judgment is affirmed.